**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JUST WOOD INDUSTRIES,
INCORPORATED,
Plaintiff-Appellee,

v.

CENTEX CONSTRUCTION COMPANY,
INCORPORATED,                                    No. 98-1855
Defendant-Appellant,

v.

FIDELITY & GUARANTY INSURANCE
COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-97-1131-A)

Argued: May 5, 1999

Decided: August 12, 1999

Before MURNAGHAN, LUTTIG, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James E. Edwards, Jr., OBER, KALER, GRIMES &
SHRIVER, P.C., Baltimore, Maryland, for Appellant. Richard G.

Mann, Jr., WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P., McLean, Virginia, for Appellees. **ON BRIEF:** David L. Cole, Jr., OBER, KALER, GRIMES & SHRIVER, P.C., Baltimore, Maryland, for Appellant. Fred A. Mendicino, WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P., McLean, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In July 1997, Just Wood Industries, Inc. (Just Wood) filed a diversity action in United States District Court against Centex Construction Company, Inc. (Centex) for alleged breaches of contract and tortious interference with contract. Centex in turn filed counterclaims against Just Wood and its surety, Fidelity & Guaranty Insurance Co. (Fidelity),[1] alleging breach of contract. The suit proceeded to trial and a jury found in favor of Just Wood on its breach of contract claims, against Just Wood on its claim of tortious interference with contract, and against Centex on its counterclaims. The jury awarded Just Wood $785,000 in damages. The district court denied Centex's post-trial motions and entered final judgment in accordance with the jury verdict. Centex now appeals to this Court. For the reasons that follow, we affirm.

I.

This dispute arose from Centex's engagement of Just Wood as a specialty subcontractor in the construction of the United States Fish & Wildlife Service's National Education and Training Center (the

_____

[1] Because of the surety relationship and the aligned interests of Fidelity and Just Wood, we refer to Appellees collectively as "Just Wood" within the opinion.

2

Center) in West Virginia. Centex and Just Wood entered into two agreements dated October 31, 1994, which governed their commercial relationship -- the "Purchase Agreement" and "Subcontract." The Purchase Agreement provided for the purchase of specialty woodwork and the Subcontract covered the woodwork's installation. In addition to setting out the terms of performance, the agreements also contained a "condition precedent" requiring Just Wood to provide bonds that variously guaranteed supply, payment, and performance under the Purchase Agreement and Subcontract. For its part of the project, Just Wood was to be paid approximately $3 million.

Just Wood began performing preliminary work on the project in October 1994, but did not furnish the bonds until December 1995. The entire project, however, was substantially behind schedule, and Just Wood was unable to begin its on-site work until August 1996. Aside from the timing issues, the parties had ongoing disputes about both the materials and the installation. Just Wood complained that the environmental conditions inside the buildings were unacceptable and that Centex and tradesmen under its control were improperly interfering with the installation efforts. Centex maintained that Just Wood did not meet the exacting quality standards required under the Subcontract and Purchase Agreement, and eventually terminated Just Wood "for cause." Centex immediately replaced Just Wood with another subcontractor, Greenbrier Architectural Woodwork (Greenbrier), who finished the work originally assigned to Just Wood.

Just Wood then filed suit alleging that it was wrongfully terminated because Centex failed to demonstrate sufficient cause. Just Wood also alleged that Centex had delayed the timing of performance, had failed to make timely payments, and had tortiously interfered with contractual relations. Centex counterclaimed, alleging that Just Wood had failed to meet its contractual obligations and that Fidelity, as surety, was obligated to indemnify Centex against damage caused by Just Wood's breach.

A trial was held in the United States District Court for the Eastern District of Virginia in March 1998. After hearing evidence, a jury found in favor of Just Wood and awarded $785,000 in damages. Final judgment was entered in accordance with the jury verdict on March 18, 1998. Centex timely noted an appeal to this Court.

On appeal, Centex argues that the district court failed to properly interpret the contracts, that evidence was improperly admitted at trial, that Just Wood's counsel made improper statements during closing argument, and that the district court erred when it denied Centex's motions for judgment as a matter of law. We address these issues in turn.

II.

A.

Centex first argues that the district court erred in instructing the jury because it failed to interpret the contracts for the jury and that the district court improperly instructed the jury about contract ambiguity and the law of substantial performance. Just Wood responds that the jury instructions were proper, and that in any case, Centex failed to object to them at trial.

As an initial matter, we address Just Wood's contention that Centex failed to properly object at trial. Federal Rule of Civil Procedure 51 states that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. A review of the record demonstrates that Centex did submit written objections challenging the jury instructions related to contract ambiguity. Centex also generally objected to Just Wood's jury instruction number 46, which discussed substantial performance, claiming that it incorrectly stated the law applicable to the case and was unsupported by the evidence. These objections were sufficient to preserve error for our review.

Contract interpretation is a matter of law and is within the province of the courts, as is the authority to allow a jury to interpret a contract if a court determines that it is ambiguous. See Wilson v. Holyfield, 313 S.E.2d 396, 398 (Va. 1984) ("[T]he question whether a contract is ambiguous is not one of fact but one of law."). We, therefore, review the district court's interpretation of the contracts de novo. See Nehi Bottling Co. v. All-American Bottling Corp., 8 F.3d 157, 162 (4th Cir. 1993). Although Centex generally complains that the district

4

court should have better defined the meaning of the contract, Centex only specifically complains that the district court erred in delivering an instruction on ambiguity and on substantial performance.

By giving the instruction on contract ambiguity, the district court implicitly determined that the contracts were in fact ambiguous and that it was within the jury's province to interpret such contracts. See Glazer v. Glazer, 374 F.2d 390, 412 (5th Cir. 1967) ("The court did not specifically state whether it found the contract ambiguous as a preliminary matter. We find the court's failure to state an express view, however, to be implied recognition of the agreement's ambiguity."). On appeal, Centex makes no substantive argument as to the contracts' clarity specifically or generally, nor does Centex offer any evidence of how such an interpretation was injurious to its interests.[2] The district court instructed the jury on how to interpret the terms of the contracts in accordance with Virginia model jury instructions. Absent any substantive argument pointing to specific contract provisions at issue during the trial that were improperly deemed to be ambiguous by the district court, we refuse to alter the judgment of the district court.

Centex also claims that the jury instructions related to the doctrine of substantial performance were given in error. The doctrine of substantial performance is a cornerstone of contract law that mandates payment if the contractual obligations are substantially performed with only minor deficiencies. See, e.g., West Va. Human Rights Comm'n v. Smoot Coal Co., 412 S.E.2d 749, 754 (W. Va. 1991); Neely v. White, 14 S.E.2d 337, 340 (Va. 1941). This doctrine mitigates the harsh consequences that would accrue if small errors in performance were treated as material breaches, e.g., termination of the defaulting party and full damages resulting from failing to complete performance. See 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.15, at 490 (2d ed. 1998). As courts have long recognized, allowing full remedies for only minor deficiencies would amount to unreasonable economic waste. See, e.g., Kirk Reid Co. v. Fine, 139 S.E.2d 829, 836 (Va. 1965). In sum, the doctrine of substantial performance

_____

**2** We note that Centex's objections at trial also failed to identify any contract provision at issue that Centex believed to be unambiguous as a matter of law, requiring an interpretation by the district court.

5

constrains the amount of damages when the deviations from contract terms are minor.

Centex asserts that the terms of the Purchase Agreement and the Subcontract defeated the doctrine of substantial performance and thereby required undeviating compliance with the contract terms. First, Centex argues that as a federal project, the government was entitled to demand strict compliance. Whether that is true is immaterial[3] because the federal government is not a party to this case and Centex is only entitled to hold Just Wood to the requirements of the Purchase Agreement and Subcontract to which the two parties mutually assented. Without more, we do not believe that the federal government's involvement in a project obviates the doctrine of substantial performance.

Second, Centex argues that the terms of performance require strict compliance and thus obviate the normal rule of substantial performance. Although we agree with the assertion that contracting parties might bind themselves to an agreement that would allow full termination and recovery rights for even the most minor of breaches, we do not believe that is the case here.

Centex's second argument is based upon an interpretation of a Virginia case, which allegedly held that if a contract requires strict compliance, then its terms do not allow for any deviation, however minor. See Winn v. Aleda Const. Co., 315 S.E.2d 193, 195 (Va. 1984) ("Given their usual, ordinary, and popular meaning, `strictly' means `particularly severe in requirement: permitting no evasion . . . maintained absolutely without deviation . . . .'" (quoting Webster's Third New International Dictionary 2261 (1981)) (alteration in original)). The context of this holding leads us to believe, however, that Virginia

_____

3 We have reviewed the two Federal Circuit cases primarily relied upon by Centex for the assertion that the doctrine of substantial performance is inapplicable to federal government contracts-- Madigan v. Hobin Lumber Co., 986 F.2d 1401, 1403-04 (Fed. Cir. 1993), and Peters v. United States, 694 F.2d 687, 695 (Fed. Cir. 1982). These cases do not expressly reject the doctrine of substantial performance, but simply assert the basic principle of contract law that a party is entitled to receive the full benefits expressly conferred by the terms of the contract.

6

has not determined that the use of the term "strict" eliminates the doctrine of substantial performance nor does it give a contracting party the right to terminate the other party for the most minor deficiency in performance. In Winn, the court implemented contract terms, which included what amounted to a liquidated damages clause mandating that nonperformance of a particular duty would result in the forfeiture of a progress payment. Thus, Winn was a simple case of measuring damages in accordance with the plainly agreed-upon terms. The Virginia court did not expressly eschew the doctrine of substantial performance.

In the case before us, there is no such liquidated damages clause. Instead, there is only a general statement regarding the expected level of performance. The Purchase Agreement states that "materials shall be in strict accordance with the agreement between the [government] and [Centex]." (J.A. at 1090.) The Subcontract uses less exacting language: "The work shall be performed in a first-class manner as required by and in accordance with the Contract Documents." (J.A. at 1106.) This language conveys an expected level of performance, which is "strict" in the case of the Purchase Agreement, but does not indicate that anything less would be a material breach giving Centex the absolute right to terminate the entire contract and exact full damages. If it did, a five-dollar error on a three-million-dollar project would presumably give Centex the right to terminate the contract. It would be absurd to hold that the mere use of the term "strict" to clarify the requirements of performance would subject Just Wood to the consequences of a material breach for the most minor errors. We do not accept the position that inserting the requirement of strict performance defeats the doctrine of substantial performance.

Instead, the language delineates only the expected level of performance or the departure point from which damages may be measured. For example, absent the requirement of strict compliance, Just Wood might supply a better grade of wood in a particular area, rather than the grade that was contractually required. In most circumstances, this substitution presumably would not result in any damage and would likely be deemed substantial performance. By using the term "strict," Centex might be in a better position to demand specific performance or have a better chance of proving a material breach depending on the significance of the deviation. The district court's jury instruction on

7

substantial performance reflected this understanding by stating that Centex was entitled to "full and complete performance"[4] and that Just Wood's performance would be satisfactory only if it was "so nearly equivalent to what was bargained for that it would be unreasonable to deny . . . the payment agreed upon." (J.A. at 903.) Undoubtedly, the term "strict" has import, though not as much as Centex would like. Accordingly, we believe the instruction on substantial performance was proper.

We find no error in the district court's interpretation of the contract or the related jury instructions.

B.

Centex next argues that the district court improperly admitted evidence about Greenbrier's performance as a replacement subcontractor for Just Wood and improperly admitted a "logbook" compiled from notes taken by a Just Wood employee. We review the admission of evidence under the narrow abuse of discretion standard and will not reverse the district court's decision unless it is"manifestly erroneous." General Elec. Co. v. Joiner, 118 S. Ct. 512, 517 (1997).

1.

During the course of trial, Just Wood introduced a significant amount of testimonial and illustrative evidence concerning the quality of Greenbrier's work as a replacement for Just Wood. The evidence tended to show that, at least in some instances, Greenbrier's work was inferior to that performed by Just Wood.

Centex argues that the district court abused its discretion in admitting evidence of Greenbrier's subsequent performance as the replacement contractor because it had no bearing on whether Just Wood fulfilled its contractual duties. Specifically, Centex contends that Greenbrier's performance was irrelevant and thus inadmissible under the Federal Rules of Evidence. See Fed. R. Evid. 402 ("Evidence

_____

[4] Notably, after hearing all of the evidence, the jury awarded no damages to Centex.

8

which is not relevant is not admissible."). Centex's position relies primarily on a case from the Seventh Circuit, <u>Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.</u>, 970 F.2d 273 (7th Cir. 1992). The Seventh Circuit held that treating similarly situated parties differently has no bearing on determining contractual default. <u>See id.</u> at 279 ("The fact that the Cookie Company may, as the Sigels argue, have treated other franchisees more leniently is no more a defense to a breach of contract than laxity in enforcing the speed limit is a defense to a speeding ticket."). Although we believe there is logic in the view expressed by the Seventh Circuit, we also believe that if two parties are laboring under identical performance standards, the acceptance of work from one of the parties may logically bear upon Centex's own interpretation of the contractual obligations.

The parties' understanding of the acceptable level of performance under the contract is relevant when, as here, a court has determined provisions of the contract to be ambiguous. <u>Cf. Aiken County v. BSP Div.</u>, 866 F.2d 661, 670 n.11 (4th Cir. 1989) ("It is not necessary to resort to the evidence concerning the parties' understanding of this interpretation because we find the contract unambiguous."). Undoubtably, certain of the performance criteria were objective and unambiguous. Yet, other important terms of the contract were less than clear, such as the Subcontract's requirement that work be performed in a "first-class manner." (J.A. at 1106.) The evidence of Centex's interpretation was thus relevant to a central question before the district court -- whether Just Wood's work fell below the ambiguous contractual standards. The district court's decision to admit the evidence of Greenbrier's performance was not an abuse of discretion.

2.

Centex also complains that the district court abused its discretion by admitting a project logbook into evidence, which was prepared by a Just Wood employee after this litigation was underway. The logbook contained information about conditions at the project site and, most importantly, humidity readings that bore directly on whether Centex was maintaining a proper environment for the sensitive woodwork. Centex argues that admitting the logbook violated the hearsay rule and that the logbook did not meet the requirements of the busi-

9

ness records exception, Fed. R. Evid. 803(6), because it was prepared long after the events recorded and because it was prepared in anticipation of litigation.

Federal Rule of Evidence 803 allows business records to be admitted into evidence even though they would otherwise be considered inadmissible hearsay:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6). A Just Wood employee who worked on-site at the Center testified that it was Just Wood's regular practice to maintain such a logbook, that the information was recorded contemporaneously with the conditions observed, and that he prepared the logbook. Based upon these facts, the district court found that logbook was admissible.

Our review of the district court's decision to admit the logbook reveals no abuse of discretion. All of the critieria for admissibility under Fed. R. Evid. 803(6) were met: the site conditions originally were recorded at the time they were observed; the preparer had personal knowledge of the information; the information was maintained in the regular course of business; and, finally, the fact that the logbook itself was prepared at a later date did not render it unreliable. A careful reading of the timeliness requirement contained in Fed. R. Evid. 803(6) reveals that it relates to the reliability of the information recorded. See Missouri Pacific R.R. Co. v. Austin, 292 F.2d 415, 422-23 (5th Cir. 1961) (noting that the timing requirements should be

10

viewed on a case-by-case basis and according to the reliability of the sources of the information). There is no question that the preparer contemporaneously recorded his observations, and the only delay was in the transcription into a central logbook. We do not believe the time of transcription from previously recorded observations is a crucial factor under Fed. R. Evid. 803(6). The district court weighed possible unreliability stemming from the time of the transcription and did not consider it to impeach its credibility. Furthermore, based upon our review of the record, no other facts about the logbook give us concern about its reliability. Accordingly, the district court's decision to admit the logbook was not an abuse of discretion.

C.

Centex next complains that during oral argument, Just Wood's counsel made various statements that impermissibly appealed to the prejudice of the jurors. Whether a new trial is warranted is committed to the trial judge's discretion and we, therefore, review only for an abuse of discretion. See Rabon v. Great Southwest Fire Ins. Co., 818 F.2d 306, 310 (4th Cir. 1987). Specifically, Centex identifies: three occasions on which Just Wood's counsel gave a personal opinion about the evidence, making statements such as, "I don't think so," after questioning the logic of certain inferences drawn by Centex; a mention of the issue of punitive damages when no instruction was to be given on punitive damages; and finally, various comments portraying the dispute as one between a large rich corporation and a small struggling entrepreneur. Our review of these instances in light of the applicable law demonstrates the soundness of the district court's decision.

In the interests of justice and efficiency, a new trial should not be lightly granted. To begin with, a new trial should be granted only if prejudicial statements are so egregious that they prevent the complaining party from receiving a fair trial. See DeBenedetto v. Goodyear Tire & Rubber Co., 754 F.2d 512, 519 (4th Cir. 1985). If a party fails to object to an error at trial, a new trial will not be granted unless "exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired." Hafner v. Brown, 983 F.2d 570, 578 (4th Cir. 1992) (internal quotation marks omitted). Finally, a curative

11

instruction may render prejudicial remarks harmless. See City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 983-84 (4th Cir. 1987).

The circumstances of the case at hand fall well outside of the situations that might qualify for the relief of a new trial. First, on the occasions when Just Wood's counsel provided a personal opinion about the evidence, Centex never objected, and, on the final occasion, the district court sua sponte corrected Just Wood's counsel. Second, when Just Wood raised the issue of punitive damages, the district court issued a curative instruction immediately. Finally, as to Centex's complaint that Just Wood's counsel improperly painted the suit as "David versus Goliath," Centex failed to object at trial. Moreover, the district court generally instructed the jury that "statements and arguments" were not evidence and that all parties were to be treated equally in a court, regardless of their positions as individuals or businesses and their respective stations in the community.

From this record, we conclude that Centex either failed to preserve the issues because it did not object at trial, or the district court delivered curative instructions contemporaneous with the offending remark or in summary instructions to the jury. Finally, taken in context, we certainly do not believe that the comments prevented Centex from receiving a fair trial. In sum, Centex has not presented us with sufficient reason to second guess the district court's exercise of discretion in refusing to grant a new trial for the allegedly prejudicial remarks.

D.

Centex's last argument is that the district court should have entered judgment as a matter of law, notwithstanding the verdict, on its behalf. Centex makes this argument as to three different issues. First, Centex asserts that it presented sufficient evidence to find Just Wood in breach of contract and that Just Wood failed to rebut that evidence. Second, Centex states that judgment as a matter of law should have been rendered against Just Wood on its breach of contract damage claims for two reasons: Just Wood failed to present timely notice of the claims as required by the Subcontract; and no agreement was formed before the bonds were delivered under the contract -- thus,

no damages could accrue until that time. Third, Centex argues that there was insufficient evidence to support the awarded damages.

Whether a judgment as a matter of law should have been granted is a question of law requiring de novo review on appeal. See Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). We are, however, bound to construe all evidence in the light most favorable to the prevailing party, and the verdict must stand unless a reasonable jury could only conclude otherwise. See id. at 1285.

1.

As to the first issue, Just Wood clearly presented sufficient evidence to rebut Centex's breach of contract claim. Experts testified that the original work performed by Just Wood appeared to comply with the relevant standards and that Just Wood maintained the required pace of work. Witnesses attributed the deficiencies to events occurring after Just Wood's installation -- events beyond the control of Just Wood but within the scope of Centex's responsibilities. Experts opined that continuing humidity problems caused by Centex's failure to control the environment adversely affected the installed woodwork. Furthermore, witnesses testified that significant damage to Just Wood's work was caused by other tradesmen working at the Center, whom Centex failed to control properly.

Finally, Just Wood's experts also testified that any installation problems could have been remedied via a "punch list," an itemized list of minor deficiencies to be corrected by Just Wood. This testimony went to the heart of whether any nonconformance constituted a material breach. The Subcontract specifically contemplated a punch list, and, therefore, errors that would naturally be a part of such a large project. If the jury believed this testimony, it was certainly sufficient to rebut charges that Just Wood committed many of the alleged breaches, much less a material breach. Viewing the evidence in the light most favorable to Just Wood, we must conclude that the district court was correct in not granting judgment as a matter of law on this point.

13

2.

The second issue Centex raises is whether it should have been granted judgment as a matter of law denying Just Wood's breach of contract claims because Just Wood failed to give Centex the contractually required notice of delay and disruption damages and because the contract was not formed until January of 1996, when Just Wood delivered the required bonds.**5**

Under the Subcontract, Just Wood was required to give Centex notice "[w]ithin five (5) calendar days after the commencement of any delay or disruption." (J.A. at 1108.) Furthermore, both the Subcontract and the Purchase Agreement required that certain bonds be provided to Centex by Just Wood as a condition precedent to the formation of the contract. In other words, absent the bonds, Centex was not bound to perform under the contracts. See, e.g., Pradhan v. Maisel, 338 A.2d 905, 909 (Md. Ct. Spec. App. 1975) (holding no contractual duty arises where there is an unfulfilled condition precedent to a contract). However, parties may freely waive conditions precedent by accepting performance. See Erlich v. Hendrick Constr. Co., 225 S.E.2d 665, 669 n.1 (Va. 1976) ("Contractor performed under the agreement, claimed its benefits, and cannot now be heard to disavow its obligations.").

_____

**5** We note Centex's argument that the Purchase Agreement contained no date certain to begin work, and, therefore, that Just Wood could not recover for any delay damages suffered under that agreement. We simply find that position mistaken. The Purchase Agreement stated that Just Wood was obligated to "submit [all plans, drawings, etc.] for approval by Owner with all possible dispatch so as not to delay the work." (J.A. at 1090.) The Purchase Agreement also stated that"[s]hipments are to be made in accordance with project requirements," subject to the penalty of cancellation "if the material specified is not shipped at the time required." (J.A. at 1090.) First, it is clear that work had to begin on the plans and drawings in accordance with the anticipated project schedule. Moreover, because Just Wood was also responsible for installation under the Subcontract, it was well aware that to avoid any delays and the risk of cancellation, it was obligated to have the fabrication complete in time to satisfy the installation schedule. We simply find no merit in Centex's argument that Just Wood was not obligated to begin work at any particular time.

14

We must reject the argument that delay and disruption damages could not have accrued because no notice was presented to Centex as required by contract. Whether Just Wood effectively provided such notice is a question of fact and therefore within the province of the jury. The record demonstrates that at least some evidence was introduced showing that Just Wood informed Centex of various difficulties, which led to additional work and expense. Viewing this evidence in a light most favorable to Just Wood, the prevailing party, we believe that a reasonable jury could have found that Just Wood adequately informed Centex of the problems, thus satisfying the contractual conditions.

Based upon our review of the record, we also must disagree with Centex's position that the conditions precedent contained in the Subcontract and Purchase Agreement prevent any recovery for damages suffered previous to Just Wood's presentation of the bonds. We believe that Centex waived the condition precedent by accepting work performed under the contracts before the required bonds were furnished. At trial, evidence was introduced showing that Just Wood performed scheduling and drafting work under the contracts, which Centex accepted before the bonds were provided. By accepting work under the contract, Centex forfeited any right that it had to disavow the effectiveness of the contracts prior to the provision of the bonds.

The district court did not err in denying judgment as a matter of law on this issue.

3.

Centex's final argument is that Just Wood did not support its damages claim as a matter of law because it did not prove the damages with reasonable certainty. See, e.g., Carr v. Citizens Bank & Trust Co., 325 S.E.2d 86, 90-91 (Va. 1985). However, we note that Just Wood provided significant evidence of the loss from its own financial records. Although Centex attacks the underpinnings of those records and the related projections, these matters were explored fully at trial. Based upon our review, we believe that the district court was correct in concluding that the evidence provided a sufficient basis upon which a jury could award damages.

15

III.

Finding no reversible error, we affirm.

<u>AFFIRMED</u>

16