**Howard DAVIS, Plaintiff,**

v.

**MONSANTO COMPANY, Defendant.**

**Civ. A. No. 84–2493.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 14, 1986.

Leland T. Sloan, St. Albans, W.Va., for plaintiff.

Alicia J. Clegg, Bowles, McDavid, Graff & Love, Charleston, W.Va., for defendant.

## ORDER

HADEN, Chief Judge.

This case is presented to the Court on cross motions for summary judgment. The Plaintiff, Howard Davis, and the Defendant, Monsanto Company, have each moved for summary judgment by motions filed November 4, 1985. Davis has also moved for reconsideration of this Court's Order entered October 21, 1985. Davis' argument fails to establish good cause to alter the time frames established in the Pretrial Procedures and Final Scheduling Order entered April 5, 1985, for amendment and joinder of parties. Further, allowance of this amendment would delay consideration of this action now set for trial in February, 1985. Accordingly, on the grounds asserted, Davis' motion to vacate the Order entered October 21, 1985, is denied.

With respect to the motions for summary judgment, the Court finds the following facts to be undisputed. In March of 1983, Howard Davis began experiencing marital problems. In March of 1984, his wife left him. During March of 1984, Davis experienced difficulty sleeping, lost weight—28 pounds in four weeks—and felt nervous. Davis voluntarily made an appointment to see Lyn Lewis, who subcontracted counseling services for Personal Performance Consultants, Inc. PPC provided counseling services to Monsanto's employees as a fringe benefit to those employees. Lewis, who has a Master's Degree in counseling, has practiced psychotherapy for fourteen years. At the appointed time on the morning of March 20, 1984, Lewis met with and counseled Davis for about an hour and a

half at Lewis' office in Charleston. Lewis observed and evaluated Davis physically and mentally. Based upon Lewis' observation, he concluded that Davis was dangerous to the point of being suicidal to himself and homicidal toward his wife and others, and that he could easily be provoked into creating a life-threatening situation in the work place and other places. Lewis opined that this danger was imminent.[1]

Lewis, pursuant to *W. Va. Code*, § 27-3-1, and also pursuant to the Employee Statement of Understanding[2] determined that his responsibility as counselor would require him to divulge Davis' confidences in order to protect Davis and others. Lewis contacted Rick Kinyon, Corporate Manager of Operations of PPC in St. Louis, Missouri.

Kinyon contacted in turn Don Johnson, the personnel supervisor at Monsanto, and related Lewis' assessment of Davis' dangerous condition. Johnson related the information to Merle Mahler, Monsanto's personnel superintendent at its Nitro plant, and Mahler and Johnson contacted Lewis to confirm Davis' condition and to enlist his aid in determining the appropriate course of action. Lewis recommended that Davis be removed from his job and that he be urged to seek medical treatment.

All of these foregoing communications occurred between the time of Davis' counseling session on the morning of March 20, 1984, and Davis' scheduled work time at 2:30 p.m. that same day. Mahler, the personnel supervisor, contemplated removing Davis from the job and contacted the president of Davis' bargaining representative, United Steelworkers of America, Local Union No. 12610, Thomas Collier. Mahler felt that the divulging of Davis' information to the Union was necessary before taking action on Davis' employment status.[3]

Mahler conducted a meeting with Johnson, Collier and Gregory Witt—a Union committeeman. The Union representatives took exception to Lewis' assessment and the recommended action by Monsanto. The Union representative wanted an opportunity to discuss the matter with Lewis himself and a meeting was arranged. Davis was permitted to work on March 20, 1984, but Davis later took medical disability leave for four weeks. In January, 1985, Davis retired at the age of 62.

Davis' complaint contains two counts. One alleges a tortious invasion of privacy. The second alleges a breach of contract. The Court will consider the motions for summary judgment first upon the tort theory, and second on the contract theory.

Four types of invasion of privacy have been recognized under West Virginia law: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places

1. The Plaintiff does not contest the accuracy of Lewis' assessment, but rather takes issue with the manner in which Lewis and Monsanto handled the information that the Plaintiff divulged to Lewis. Plaintiff's brief in opposition to the Defendant's motion for summary judgment received November 21, 1985.

2. The Employee Statement of Understanding states as follows:
"Confidentiality. No one at PPC will reveal information concerning details of a person's counseling to anyone outside PPC without the person's written permission unless absolutely required by law. Generally, legal rules do not require release of such information except where life or safety are seriously threatened."

3. Specifically, Mahler states:
"At the time, based on information that I had been provided by the counselor, I felt we would remove Mr. Davis from his job and place him on a disability status. I felt that, based on the recommendation of the counselor, that this individual was lethal, homicidal, might cause harm to either himself or could easily be provoked and might cause harm to his fellow workers and we would most likely remove him from the job. In which case, of course, we certainly needed to talk with Union representatives about the situation, certainly the representative agent under the collective bargaining agreement and when remove a member of a bargaining agreement from an assigned job, then they certainly have to understand the reason for doing that and that was the reason for notifying the president of the Union."
Mahler deposition at pp. 13–14.

another in a false light before the public. *Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70, 83 (W.Va.1984); *cf., Cantrell v. Forest Publishing Co.,* 419 U.S. 245, 248 n. 2, 95 S.Ct. 465, 468 n. 2, 42 L.Ed.2d 419 (1974) (false light theory recognized as adopted in West Virginia); and *Roach v. Harper,* 143 W.Va. 869, 105 S.E.2d 564 (1958) (recognizing "intrusion on the seclusion of another" type of privacy claim). Davis complains of the third type—that Monsanto unreasonably publicized facts concerning his private life.

Under Section 652D of the Restatement (2d) of Torts (1977), the Court discerns four elements necessary to state a cause of action.[4] In order to establish a cause of action for public disclosure of private facts, a plaintiff would need to prove the following elements: (1) that there was a public disclosure by the Defendant of facts regarding the Plaintiff; (2) that the facts disclosed were private facts; (3) that the disclosure of such facts is highly offensive and objectionable to a reasonable person of reasonable sensibilities; and (4) that the public has no legitimate interest in the facts disclosed.

It should be noted that "publication" required in privacy actions of the sort outlined by Section 652D is different from the mere communication to a third party required under libel law. It is not an invasion of privacy to communicate the private fact to a single person or a small group of persons. The tort of invasion of privacy requires widespread publicity. *Comment A,* Restatement (2d) of Torts, § 652D.

Publication of private facts may also be privileged, either absolutely or qualifiedly. A communication of private facts is absolutely privileged if required by the law. *Crump,* 320 S.E.2d at 83 n. 5; *see also* Restatement (2d) of Torts, §§ 592A and 652F (1977). The failure to protect persons from the danger of mentally disturbed persons by one bearing a "special relationship" gives rise to a claim for damages according to *Tarasoff v. Regents of the*

*University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166 (1976). In that case, the Supreme Court of California found that a psychologist who came to know of an individual's intent to kill the plaintiff's decedent and the psychologist's employer were liable for the failure of the psychologist to inform the victim of his patient's intent to kill her.

Also, as an employer in West Virginia, Monsanto had the duty to provide all of its employees with a safe place to work. *W.Va.Code,* § 21-3-1 states:

> "Every employer shall ... adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect life, health, safety and welfare of such employees."

Additionally, a qualified privilege may attach to communications of private information. Where the communication of such information is in furtherance of the communicator's legitimate interest or where the communication is for the purpose of another's legitimate interests, the communicator is entitled to a qualified privilege. *Crump,* 320 S.E.2d at 79, 83 n. 5. *W.Va. Code,* § 27-3-1 permits information obtained in the course of a psychological treatment or evaluation to be divulged "to protect against a clear and substantial danger of imminent injury by a patient or client to himself or another." *W.Va.Code,* § 27-3-1(b)(4).

■ In the instant action, Monsanto received the information from a mental health professional who believed Davis to be lethally dangerous to himself and those around him. Davis worked with potentially dangerous chemicals in his position with Monsanto, and Monsanto's agents took immediate action to determine whether Davis should be permitted to work. Davis' ability to establish a *prima facie* claim is inhibited by the fact that Monsanto told only two persons outside the management level per-

---

**4.** The Restatement sections concerning invasion of privacy torts has been explicitly recognized in

*Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70 (W.Va.1984).

sonnel making the determination of whether Davis would continue working. This limited disclosure is not the widespread "publication" required and thus does not constitute a publication necessary to establish a cause of action for public disclosure of private facts as outlined in Restatement (2d) of Torts, § 652D.

■ Secondly, Monsanto's divulgence to the Union was in furtherance of its own interests in protecting its plant and employees from danger it also furthered the Union officials' legitimate interest in protecting its membership from danger and protecting the employment rights of Davis. Accordingly, Monsanto's disclosures were qualifiedly immune.

■ And thirdly, Monsanto's actions were required by law as Monsanto is an employer faced with a dangerous condition in its work place. Monsanto is required to make the work place safe under *W.Va. Code*, § 21–3–1. As such, Monsanto's disclosures were absolutely privileged.

As Monsanto has established facts which are not in dispute and which entitle Monsanto to judgment as a matter of law, Monsanto's motion for summary judgment is granted in favor of Monsanto on Davis' claim for tortious invasion of privacy.

■ Davis has also raised a claim that Monsanto's communications violated his contractual rights. The contract involved here is a collective bargaining agreement struck between Monsanto and the United Steelworkers of America, Local Union No. 12610. An employee must attempt to exhaust the provisions of the collective bargaining agreement before resorting to judicial relief. *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967). For matters relating to a collective bargaining contract, the grievance procedure provided therein states the exclusive remedy. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658, 85 S.Ct. 614, 619, 13 L.Ed.2d 580 (1965); *United Steelworkers of America v. American Manufacturing*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); and *United Steelworkers of Amer-*

*ica v. Warrior and Gulf Navigation Co.*, 363 U.S. 567, 578, 80 S.Ct. 1343, 1350, 4 L.Ed.2d 1403 (1960).

■ Further, any action brought pursuant to a collective bargaining agreement must be brought within the six-month statute of limitations applicable to such actions under 29 U.S.C. § 185. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Thomas v. Kroger*, 583 F.Supp. 1031 (S.D.W.Va.1984).

■ No contract between Monsanto and Davis appears in the documents presented to the Court other than the collective bargaining agreement. The scope of the bargaining agreement is indeed broad:

"The purpose of this agreement is to promote and maintain harmonious relations between the parties and to advance their mutual interests by maintaining and improving the manufacture of products at the plant. It is agreed that the fullest cooperation between the company and its employees is necessary to permit the maintenance of satisfactory manufacturing operations and payment of adequate wages. Both parties shall abide by this agreement and all mutual understandings contained herein, it being their purpose to settle all differences without disturbance to industrial peace.

It is mutually understood that the terms and conditions relating to the employment of workers covered by this agreement have been decided upon by collective bargaining. This agreement may be modified by mutual consent, in writing, by the parties hereto."

Article I, Section 2, Contract between Monsanto Company and United Steelworkers of America, Local 12610.

The agreement contains the following grievance clause:

"Any employee may discuss with the employee's firstline supervisor or the department supervisor any complaint or other matter which the employee feels requires adjustment. Should they fail to reach a satisfactory settlement, the com-

plaint may be treated as a grievance under the terms of this agreement provided the difference arises as a result of a question as to meaning and application of or compliance with the provisions of this agreement. All grievances arising under the terms of this agreement shall be settled in the following manner:"

*Id.* at Article XV, Section 1. The agreement at this place lists a three-step grievance process. This grievance process was not observed in this case. Accordingly, Davis' action against Monsanto in district court is barred for failure to resort to the grievance processes contained in the collective bargaining agreement mentioned.

Also, the incident giving rise to this claim occurred in March of 1984. This action was filed in December, 1984. Thus, the action is barred by the statute of limitations applicable to such suits.

Accordingly, there being no genuine issue of material fact and Monsanto being entitled to judgment as a matter of law, the Court grants Monsanto's motion for summary judgment on the contract count alleged by Davis.