599 S.E.2d 747

Danny L. BENSON, Plaintiff Below, Appellant

v.

AJR, INC., a West Virginia Corporation, and John M. Rhodes, Defendants Below, Appellees.

No. 31542.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 25, 2004.

Decided April 16, 2004.

Opinion of Chief Justice Maynard July 6, 2004.

Opinion of Justice Starcher July 8, 2004.

Starcher, J., filed a separate concurring opinion.

Maynard, C.J., filed an opinion concurring in part and dissenting in part.

PER CURIAM:

Danny L. Benson appeals from the July 23, 2002, order of the Circuit Court of Wood County granting summary judgment to the Appellees, AJR, Inc. ("AJR") and John M. Rhodes, in connection with the breach of employment contract and invasion of privacy claims Appellant asserted against Appellees. Upon our full review of this matter, we determine that there is a genuine issue of material fact concerning the basis for Mr. Rhodes' decision to terminate Mr. Benson's employment with AJR. Accordingly, the grant of summary judgment was improper and the decision of the lower court must be reversed to permit this factual issue to be resolved by a jury. With regard to the lower court's decision to grant summary judgment on Appellant's false light invasion of privacy claim, we find no error and accordingly, affirm.

## I. Factual and Procedural Background

AJR is a small heavy manufacturing business engaged in the manufacture and welding of truck beds. At the time when Appellant was first employed by AJR as a general welder in 1990, the company was owned by three individuals: Jackie L. Benson; Robert W. Benson; and Patricia Benson. Appellant is the son of Jackie Benson. On May 1, 1997, Appellant was promoted to supervisor and was assigned primary responsibility over three aspects of the company's operations, one of which was safety. In his supervisory position, Appellant was charged with the responsibility for directing and leading the company's safety programs and ensuring that AJR's safety rules were both observed and enforced.

During the summer of 1997, the three AJR shareholders decided to sell the company to an employee, Appellee John M. Rhodes.[1] As part of the sales transaction, Mr. Rhodes agreed to enter into an employment agreement with Appellant whereby Mr. Benson would be guaranteed employment for a period of eight years beginning on August 29, 1997.[2] While AJR had the right to ter-

Walt Auvil, Employment Law Center, Parkersburg, for the Appellant.

Niall A. Paul, Eric E. Kinder, Spilman Thomas & Battle, P.L.L.C., Charleston, for the Appellees.

---

1. He became the sole shareholder on August 29, 1997.

2. In explanation of why this agreement was entered into, the document states that "it is in the best interests of the Company that key management employees, including the Employee [Mr. Benson], continue to be employed by the Company upon" the sale of AJR.

minate Appellant with only one day's written notice under this agreement, it was required to continue paying Mr. Benson his salary for the balance of the eight-year term of employment in the absence of three specified conditions. Those conditions were: (a) dishonesty; (b) conviction of a felony; and (c) voluntary termination of the agreement by Appellant.[3]

Within less than a month after the execution of the employment agreement, Appellant acknowledged in writing his receipt of an employee manual which specified certain acts that were grounds for termination. Those grounds included the sale, possession, or use of controlled substances while on the job, during working hours, or while on company business. At the end of September 1997, concurrent with his receipt of the employee manual, Appellant signed a consent form permitting his employer to conduct random controlled substance tests.

On March 2, 1998, a drug test was administered to the employees of AJR. The results of the drug testing revealed that Appellant had more than three times the limit utilized by the United States Department of Transportation ("DOT")[4] to establish drug use and impairment. Between the time when the drug test was administered and the results were made available, Mr. Rhodes conducted

meetings with various AJR personnel during which he inquired of those in attendance whether anyone was aware of an employee who was using illegal drugs or who was arriving at work with illegal drugs or alcohol in their system. Appellant attended one of those meetings and admits that he did not respond to this question despite personal knowledge[5] that his drug test would come back positive.[6]

Along with eleven other employees who also tested positive for drug use, Appellant was terminated from the employ of AJR on March 6, 1998. AJR prepared two different termination forms in connection with Appellant's dismissal from the company. The first of the two forms indicated that Mr. Benson had resigned from his employment.[7] The second of the two termination forms lists a different reason for termination—"controlled substance testing" and "tested positive for cocaine."[8]

On March 4, 1999, Appellant filed a complaint in the circuit court in which he alleged two causes of action: breach of contract and false light invasion of privacy. After hearing argument on cross motions for summary judgment, the lower court ruled in favor of Appellees by order entered on July 23, 2002. It is from this order awarding summary

---

3. This Court *sua sponte* recognized an issue regarding the contract's interpretation based on the words chosen to draft the agreement. Because the contract was written in terms of permitting AJR to terminate Appellant "without cause," and because the subsequent salary payment obligations arise in reference to a termination "without cause," we initially questioned whether the payment obligations would be invoked in a case, such as this, where the employee was undeniably dismissed for cause. We determine, however, that the contract should be read in the fashion undertaken by the parties and the court below predominantly because the three contractual conditions that excuse AJR's requirement to pay Appellant his salary (two of which are clearly "for cause" type of dismissals) would be rendered meaningless if the payment provisions could only be invoked in a non-cause dismissal situation. *See Bischoff v. Francesa*, 133 W.Va. 474, 498, 56 S.E.2d 865, 878 (1949) (recognizing as "elementary [the] principal [sic] that, in interpreting contracts, or any written instruments, an attempt should be made to give force and meaning to all of the language employed therein").

4. According to the test results, Appellant had 1088 nanograms of cocaine metabolite benzoylecgonine per mililiter of urine in his system. Under DOT rules, 300 nanograms is the cut-off figure for establishing a positive test for metabolized cocaine.

5. Mr. Benson testified at his deposition: "I kn[ew] I had something in my system."

6. The drug test was administered on a Monday morning and Appellant contends that he had used cocaine for the first time on the previous Saturday.

7. While Appellant was given the opportunity to resign from AJR, he did not choose to resign his employment.

8. Appellant suggests that the second termination form was backdated to March 6, 1998, the same date on which the original termination form was prepared.

judgment to AJR and Mr. Rhodes that Appellant seeks relief.

## II.  Standard of Review

It is well-established that our review involving orders granting summary judgment is *de novo. See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." *Id.* at 190, 451 S.E.2d at 756, syl. pt. 4. As we recognized in syllabus point six of *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), "[a] party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." With these standards in mind, we proceed to determine whether the lower court was in error in granting summary judgment to Appellees AJR and Mr. Rhodes.

## III.  Discussion

### A.  Breach of Employment Contract

At the center of this dispute is whether AJR is required to comply with the salary payment obligation contained in the employment agreement. Under the terms of the agreement, in the event AJR decided to terminate Mr. Benson, the company was required to pay Appellant the salary that was in effect on August 29, 1997, absent a dismissal that was based on dishonesty, conviction of a felony, or if Mr. Benson voluntarily terminated the employment agreement. Appellant contends that the lower court erred in its determination that the basis for AJR's termination of Mr. Benson was dishonesty. Arguing that the circuit court wrongly adopted an overly broad definition of dishonesty, Appellant maintains that drug use and dishonesty are not synonymous and that he was not terminated on grounds of dishonesty.

To resolve the critical question of whether Appellant's positive drug test fell within the parameters of "dishonest" conduct, the trial court defined the term "dishonesty" by referring to entries in Webster's Dictionary and Black's Law Dictionary.[9] Relying on these generalized definitions, the lower court concluded that Appellant's "actions in failing a drug test and arriving at work with drugs in his system demonstrates a lack of integrity, probity, or adherence to a code of moral values." Rather than limiting its analysis to just the definition of "dishonesty," however, the circuit court included a listing of various definitions of "integrity" and found that "[a]ctions which lack integrity are, by definition, dishonest." After weighing these two definitions in essentially *pari materia,* the trial court ruled that "[p]laintiff's positive drug test, in light of all the facts and circumstances of the case, demonstrates dishonesty and a lack of integrity." [10]

In marked contrast to the trial court's willingness to define the term "dishonesty" within the meaning of the employment contract at issue, we recognize the futility of attempting to fashion a "one size fits all" definition for such term. Dishonesty, like any term that has significance in a given contract, must be defined based on the subject matter of the contract and the intent of the document's drafters. *See Oresta v. Romano Bros.*, 137 W.Va. 633, 644, 73 S.E.2d 622, 628 (1952) (recognizing "general rule"

---

9. The trial court cited a definition in Webster's, which described dishonesty as "a lack of honesty or integrity; a disposition to defraud or deceive." *Webster's New Collegiate Dictionary* 363 (9th ed. 1989). As defined by the legal dictionary, dishonesty included a "[d]isposition to lie, cheat, deceive, or defraud; untrustworthiness; lack of integrity." *Black's Law Dictionary* 324 (6th ed., West 1991).

10. One of the circumstances relied upon by the trial court was Mr. Benson's admission that he had been dishonest in failing to answer Mr. Rhodes' question regarding knowledge of drug use in the work place when he "knew to an absolute certainty that he had used illegal drugs and had them in his system when asked the question." Additional evidence cited by the trial court to support its conclusion regarding Appellant's dishonesty was the fact that "[p]laintiff admitted that he used cocaine and does not challenge the drug test."

that "words in a contract will be given their usual and primary meaning at the time of the execution of the contract") (citing 12 Am. Jur., *Contracts* § 236). We note, however, that it has been observed that "[d]ishonesty, unlike embezzlement or larceny, is not a term of art." *Gitelson v. Du Pont*, 17 N.Y.2d 46, 268 N.Y.S.2d 11, 215 N.E.2d 336, 338–39 (1966). More often than not, the issue of whether conduct qualifies as dishonest is determined to be a question best resolved by a jury. *See Wilson v. Neuhoff Bros. Packers*, 442 S.W.2d 470, 474 (Tex.Civ.App.1969) (discussing *Fidelity & Dep. Co. v. Bates*, 76 F.2d 160, 167 (8th Cir.1935)); *accord Jacobs & Co. v. Fidelity & Dep. Co.*, 202 F.2d 794, 798 (7th Cir.1953).

In this case, the record evidences Mr. Benson's admission that he was dishonest in connection with his failure to truthfully answer the question posed by Mr. Rhodes with regard to his awareness of drug use by any AJR employees. Given Appellant's clear admission of dishonesty, we proceed to determine what impact, if any, this admission of dishonesty has on the case at hand.

The lower court appears to have assumed that upon finding conduct that qualified as dishonest, this case could be resolved solely on legal grounds without requiring the assistance of a jury. The trial court reasoned that "[n]o reasonable jury could find that Plaintiff's failing of the drug test, under all the circumstances present herein, was not dishonest behavior." Critically, however, a factual issue that must be determined for purposes of ascertaining whether AJR was required under the terms of the contract to pay Appellant his salary for the remainder of the eight-year contractual period is the *reason* upon which AJR relied in terminating Mr. Benson's employment. Under the employment contract at issue, the determining factor that controls the issue of continued salary payment is whether the basis for the termination was "dishonesty" or "conviction

of a felony," or, alternatively, whether there was a "voluntary termination of ... [the] agreement."

The record in this case is unclear as to whether AJR dismissed Mr. Benson from its employ for drug use or for dishonesty. As Appellant emphasizes in his argument, nowhere on either of the two termination forms that were introduced below is there any indication that he was dismissed for dishonesty. We are unwilling to make the leap that the trial court did to broadly encompass testing positive for drug use within the meaning of the term "dishonesty." Consequently, we conclude that Appellant is entitled to have a jury determine the basis for AJR's decision to terminate Mr. Benson from its employ. If the jury determines that drug use, rather than dishonesty, was the basis for the dismissal, then the provisions of the employment contract with regard to continued payment of Appellant's salary for the duration of the contractual term are applicable.[11] If, however, the jury determines that Mr. Benson was in fact terminated for being dishonest, then AJR is not required to pay his salary under the terms of the employment contract.

### B. False Light Invasion of Privacy

◼ As the basis for this claim, Appellant averred that AJR wrongly published and disseminated his drug test results to certain persons. According to the factual findings of the lower court, "Mr. Rhodes informed, at most, three (3) individuals of Plaintiff's drug test result: Robert Benson, a former owner and creditor of AJR; Mr. Rhodes' wife, AJR's corporate Secretary; and Brenda Benson,[12] an employee of AJR who served in the capacity of administrative assistant secretary and who assisted Mr. Rhodes in managing AJR's business office."

◼ In *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1983), we

---

11. We note, however, the salary which Appellant would be required to be paid is determined by the rate of salary that he was making at the time the employment contract was entered into on August 29, 1997. Under the clear terms of the contract, the continued payment of salary was expressly tied to the salary Mr. Benson was making "on the date of ... [the] agreement." The

terms of that salary arrangement are specified in paragraph 3 of the agreement and include a base salary plus a quarterly bonus of a net payment of $1,000 after "required payroll deductions."

12. Brenda Benson is the sister of Appellant.

discussed the tort of invasion of privacy. In syllabus point eight of *Crump*, we held that "[a]n 'invasion of privacy' includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." *Id.* at 703, 320 S.E.2d at 74. The lower court relied upon both *Crump* and the adoption of the Restatement of Torts definition of an invasion of privacy claim by the federal district court in *Davis v. Monsanto Co.*, 627 F.Supp. 418 (S.D.W.Va.1986), in delineating the following as the elements of a false light invasion of privacy claim:

> (1) that there was a public disclosure by the Defendant of facts regarding the Plaintiff; (2) that the facts disclosed were private facts; (3) that the disclosure of such facts is highly offensive and objectionable to a reasonable person of reasonable sensibilities; and (4) that the public has no legitimate interest in the facts disclosed.

*Id.* at 421 (quoting *Restatement (Second) of Torts* § 652D (1977)).

In ruling that Appellant had failed to prove a claim for false light invasion of privacy, the trial court held:

> "It is not an invasion of privacy to communicate the private fact to a single person or a small group of persons. The tort of invasion of privacy requires widespread publicity." *See Davis*, 627 F.Supp. at 421; *see also Crump*, 173 W.Va. at 716, [320 S.E.2d at 88] (holding "false light" privacy action requires "wide spread publicity").

Applying this holding to the facts in the case at bar, the circuit court held that the "minimal communication" to three individuals, "all of whom are AJR employees, officers, or creditors" "does not amount to widespread publicity." We agree. Accordingly, we uphold the grant of summary judgment to Appellees on Appellant's claim of false light invasion of privacy.

Having found no error with regard to the grant of summary judgment to Appellees on the false light invasion of privacy claim, we affirm the July 23, 2002, order of the Circuit Court of Wood County on this issue. Given our separate determination that a genuine issue of material fact requires jury resolution on the breach of employment claim, we hereby reverse and remand this matter to permit proceedings consistent with the rulings herein stated.

Affirmed in part, Reversed in part, and Remanded.

Chief Justice MAYNARD concurs in part and dissents in part and files a separate opinion.

Justice STARCHER concurs and files a concurring opinion.

MAYNARD, Chief Justice, concurring, in part, and dissenting, in part.

(Filed July 6, 2004)

What a terrible message this case sends to small West Virginia employers and businesses! This Court tells this company that it should not have fired an employee who:

(1) admitted that he used cocaine;

(2) reported to work with cocaine in his system;

(3) failed a drug test in which he tested positive for cocaine;

(4) misrepresented his drug use by failing to truthfully answer management's inquiries about drug use;

(5) worked in a plant where steel fabrication involving constant welding occurs;

(6) continually worked around large quantities of explosives and highly volatile gases and liquids including acetylene, oxygen tanks, thinner paint, and other explosive substances; and, here is the icing on the cake;

(7) was the SAFETY DIRECTOR of the company!! Appalling!

This Court now says that AJR was wrong to fire a deceitful, coke-head safety director in a plant where tanks of acetylene, oxygen, and other explosives are everywhere! The irony is that if there had been some explosion or other accident which killed or seriously injured another employee, the victim of that accident could have successfully sued under our workers' compensation deliberate intent statute and obtained a large verdict. This

Court doubtless would have upheld the large verdict based on the fact that the company allowed a cocaine user to be its safety director.

In distinguishing between dishonesty and drug use under the specific facts of this case, the majority opinion does one of the finest jobs of legalistic hairsplitting in the history of American jurisprudence. The undisputed facts show that if Appellant was terminated for dishonesty, AJR was not obligated to pay Appellant his salary for the balance of the employment agreement. Appellant was responsible for safety at AJR's facility including enforcing AJR's drug-free workplace policy. Appellant received a copy of AJR's employee manual which states, in part, that employees may be terminated for the sale, possession, or use of controlled substances while on the job, during work hours, or while on company business. After Appellant failed a drug test, he admitted that he used cocaine the Saturday immediately prior to the Monday drug test. Finally, he also admitted that he was dishonest with management when he failed to answer management's questions regarding possible drug use in the workplace because he knew to an absolute certainty that he had used illegal drugs and had them in his system when asked the question.

Given these facts, I must disagree with the majority that a jury could determine that drug use rather than dishonesty was the basis for Appellant's dismissal. This is a distinction without a difference. Appellant's drug use, established by the positive drug test, demonstrates dishonesty. Specifically, Appellant, who was responsible for enforcing a drug-free workplace, knowingly violated his employer's drug-free workplace policy by coming to work with cocaine in his system. This is dishonest conduct. Actually testing positive for the drug use is evidence of this dishonest conduct. Therefore, it is irrelevant whether the official reason for Appellant's dismissal was dishonesty or drug use.

Finally, troubling also is the majority opinion's failure to address AJR's argument that Appellant's decision to appear for work under the influence of cocaine was tantamount to a willful quit; substantial public policy against rewarding a person for his or her

dishonesty; and the impact of Appellant's admission of dishonesty. The plain fact is that any of these matters would have been sufficient for this Court to affirm the summary judgment on behalf of AJR.

In sum, I concur with affirming the circuit court's grant of summary judgment on the false light invasion of privacy claim, but I dissent to the majority's reversal of the circuit court's grant of summary judgment on the breach of contract claim.

STARCHER, J., concurring.

(Filed July 8, 2004)

I write separately to emphasize what the majority's opinion really says, and what it does not say.

This case is all about the power of a contract. The defendant-employer, AJR, Inc., entered into a written contract in 1997 with plaintiff-employee Danny L. Benson that guaranteed Mr. Benson employment until August 2005. Nobody disputes the clarity of this part of the agreement.

However, nowhere does the contract say that Mr. Benson cannot be fired. The contract did allow the defendant-employer to show Mr. Benson the door with pink slip in hand any time it chose to do so. But the contract also contained a clear, black-and-white penalty clause which said that if the defendant-employer let Mr. Benson go, then the defendant-employer would still be required to pay Mr. Benson his remaining wages through August 2005. Again, none of the parties disputes the clarity of this penalty clause built into the agreement.

The fuzzy area in this case is a loophole for the defendant-employer that was built into the contract which allowed the defendant-employer to escape the penalty clause if Mr. Benson was fired because of "dishonesty." The contract does not define "dishonesty." So, when Mr. Benson's drug use was discovered, and the defendant-employer fired him, the question was raised whether Mr. Benson's firing was motivated by Mr. Benson's dishonesty, or for some other reason.

The defendant-employer vigorously asserts that it fired Mr. Benson because the owner of the company conducted meetings with com-

pany employees that included Mr. Benson, at which time the owner asked if anyone was aware of an employee who was using illegal drugs or was arriving for work with illegal drugs in his or her system; Mr. Benson said nothing when asked the question. The defendant-employer now asserts that Mr. Benson was fired when the cocaine test results were returned because his dishonesty—in the form of not responding to the question—was revealed. The defendant-employer therefore asserts that it does not have to pay Mr. Benson his remaining wages in compliance with the penalty clause.

The problem with the employer's argument is the written documentation surrounding Mr. Benson's firing. When Mr. Benson was fired, the employer completed a form indicating he was fired in accordance with the employees' manual (which mandated automatic termination for drug usage) for "controlled substance testing" and "tested positive for cocaine." This position was reiterated in writing several times by the company's owner and the company's counsel. The contractual "dishonesty" loophole was not raised by the employer until sometime later, when Mr. Benson asserted his contractual right to his remaining years of wages.

The competing positions taken by the employer raise, beyond a doubt, is a question of fact for jury resolution as to the true motivating factor behind Mr. Benson's termination. The circuit court was wrong to substitute its judgment on this factual question for that of the jury. A jury should hear the witnesses to Mr. Benson's firing testify, should review the documentation surrounding that firing, and should decide for themselves if Mr. Benson's firing was motivated by (a) dishonesty or (b) drug use. If the jury's answer is the former, Mr. Benson gets nothing; if the jury's answer is the latter, the defendant-employer must comply with the written employment contract and pay Mr. Benson his wages under the contract's penalty clause.

That said, let's get straight what this case is *not* about. This case is not—as my dissenting colleague suggests—a case that says a small employer cannot fire an employee who uses drugs. The employer in this case was fully within its rights to fire Mr. Benson—but it had to be willing to pay the price if that firing breached the employment contract. A contract is a promise, and a breach of that promise carries consequences. I disagree with my dissenting colleague's implicit suggestion that because of bad facts, this Court should make bad law, throw hundreds of years of contract law to the wind, and find that because Mr. Benson's actions are less-than-palatable, the contract should be ignored.

If anything, this case says that small employers should not give their employees open-ended contracts guaranteeing them employment. The defendant-employer in this case could have easily put in the contract a clause allowing Mr. Benson to be fired, without penalty to the defendant-employer, for using illicit substances on the job. Luckily, the majority opinion makes clear that the defendant-employer might still be able to hang its hat on the vague term "dishonesty," and prevail before a jury by showing that a lack of veracity on Mr. Benson's part was the motivating factor behind his termination.

I therefore respectfully concur with the majority opinion.