# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Clinton Giles,
**Plaintiff Below, Petitioner**

**vs)  No. 17-0139**  (Kanawha County 16-C-74)

Kanawha County Board of Education
and Pete Thaw, individually and in his
capacity as a member of the Kanawha
County Board of Education,
**Defendants Below, Respondents**

**FILED**

**January 5, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Clinton Giles, by counsel James M. Cagle, appeals the January 17, 2017, order of the Circuit Court of Kanawha County that dismissed his claims of false light invasion of privacy and defamation against Respondents Kanawha County Board of Education ("Board") and Pete Thaw, individually and in his capacity as a Board member. The Board, by counsel M. Andrew Brison, and Mr. Thaw, by counsel Johnnie E. Brown and Megan Goodall, filed responses in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner, a thirty-four year employee of the Board, became principal of Capital High School in 2002. On February 3, 2015, he was charged by criminal information with the misdemeanor offense of failing to timely report an alleged sexual assault that occurred on the school's premises.[1] Also on that date, petitioner was suspended without pay and then, on

---

[1] Petitioner was charged with violating West Virginia Code § 49-6A-2, which provided, in part, that

> [a]ny . . . school teacher or other school personnel . . . who has reasonable cause to suspect that a child is neglected or abused . . . shall immediately, and not more than forty-eight hours after suspecting this abuse or neglect, report the circumstances or cause a report to be made to the [DHHR]: Provided, That in any case where the reporter believes that the child suffered . . . sexual assault, the

(continued . . .)

1

February 9, 2015, he voluntarily resigned his position.

It is undisputed that Respondent Thaw made the following statements to local news media on February 9, 2015, at a press conference following the Board meeting at which petitioner's resignation was accepted: (1) "I voted to make Clinton Giles principal at Capital High School. It was the second worst mistake I ever made but I did it and I want to apologize but I did and I've had nothing but complaints[;]" (2) "I do regret that we're letting him call the tune when he quits[;]" and (3) "Let's face it, when this sort of crime occurs most people would report it immediately, apparently we have to say so." The local news media widely reported the events giving rise to the criminal charge and, later, petitioner's resignation and Thaw's statements.

On March 13, 2015, the criminal case against petitioner was dismissed, with prejudice.[2]

On May 16, 2016, petitioner filed an amended complaint against respondents alleging claims of defamation and false light invasion of privacy. The Board filed a motion to dismiss under West Virginia Rule of Civil Procedure 12(b)(6), while Respondent Thaw filed a Rule 12(b)(6) motion to dismiss or, alternatively, a motion for summary judgment. Petitioner filed responses thereto. By order entered January 17, 2016, the circuit court granted respondents'

---

reporter shall also immediately report, or cause a report to be made, to the State Police and any law-enforcement agency having jurisdiction to investigate the complaint.

Effective February 15, 2015, West Virginia Code §§ 49-1-1 to 49-11-10 was amended and recodified. West Virginia Code § 49-6A-2 was recodified as § 49-2-803(a); the provisions are substantially similar.

[2] Petitioner states, and respondents do not dispute, that the facts of this case do not fall within the statute petitioner was charged with violating, and that the State ultimately acknowledged its error in charging petitioner under this statute, which concerned the procedure for reporting suspected abuse or neglect of children under the laws governing child welfare. As for the facts giving rise to the charge, the amended complaint recounted that, on January 26, 2015, a female student at the school informed a school counselor that she and a male student had engaged in sexual intercourse that day at the school and that it may not have been consensual; that, after school that day, the counselor informed petitioner about the female student's allegations; that petitioner directed the school's assistant principals to review the security tapes of the area where the incident reportedly occurred; that, early the next day, after the assistant principals reported to petitioner that they had reviewed the tapes, petitioner reported the allegations to the Board's Title IX Coordinator and to the police officer assigned to the school. Petitioner alleged in the amended complaint that "[t]his procedure was both in conformity with the Board's requirements as contained in written protocol and consistent with West Virginia law."

motions.[3] This appeal followed.

This Court has held that "'[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is de novo.' Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W. Va. 770, 461 S.E.2d 516 (1995)." Syl. Pt. 1, *Roth v. DeFeliceCare, Inc.*, 226 W. Va. 214, 700 S.E.2d 183 (2010). Further, we review the appropriateness of a Rule 12(b)(6) motion to dismiss as follows:

> "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 [78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84] (1957).

Syl. Pt. 3, *Chapman v. Kane Transfer Co.,* 160 W.Va. 530, 236 S.E.2d 207 (1977). *See also Long v. Egnor*, 176 W. Va. 628, 632, 346 S.E.2d 778, 782 (1986). However, we have stated that, although this rule is generally applicable in the ordinary case,

> [t]he First Amendment to the United States Constitution and Article III, Section 7 of the West Virginia Constitution require that trial courts apply a stricter standard in appraising defamation actions filed by public officials or public figures under a motion to dismiss filed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Unless the complaint demonstrates on its face sufficient facts to support the elements of a defamation action, the complaint should be dismissed under Rule 12(b)(6).

*Long* at 630, 346 S.E.2d at 780, syl. pt. 3.[4]

In his first assignment of error, petitioner argues that the circuit court erred in dismissing his defamation claim against respondents. The appropriate test for determining defamation was set forth in syllabus point four of *Long*, in which we held:

---

[3] The circuit court also determined, given its ruling dismissing both the defamation and false light claims, that the issue of whether Respondent Thaw acted individually or as an employee of Respondent Board is moot.

[4] The circuit court specifically found, and petitioner does not dispute, that petitioner "was at least a 'public figure by the force of consequences' as recognized in *Crump v. Beckley Newspapers, Inc.,*" 173 W. Va. 699, 712, 320 S.E.2d 70, 83–84 (1983). *See Id.* at 712, 320 S.E.2d at 83 ("Although a person may not actively seek publicity, he or she may become a public personage by the force of consequences which make his or her activities of legitimate interest to the public.").

"[A] public official . . . can sustain an action for libel only if he can prove that: (1) the alleged libelous statements were false or misleading; (2) the statements tended to defame the plaintiff and reflect shame, contumely, and disgrace upon him; (3) the statements were published with knowledge at the time of publication that they were false or misleading or were published with a reckless and willful disregard of truth; and, (4) the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material." Syllabus Point 1, in part, *Sprouse v. Clay Communication, Inc.,* 158 W.Va. 427, 211 S.E.2d 674, 95 A.L.R.3d 622, *cert. denied,* 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107 (1975).

176 W. Va. at 630, 346 S.E.2d at 780. *See also State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 352, 480 S.E.2d 548, 561 (1996). Petitioner acknowledges, however, that "[a] court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory meaning." *Long*, 176 W. Va. at 630, 346 S.E.2d at 780, syl. pt. 6. *See also Id.* at syl. pt. 5 (holding that "'[u]nder *New York Times v. Sullivan*, 376 US. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1969), whenever there is a First Amendment defense to actions under state law, the state court is required to be a judge of both the facts and the law.' Syllabus Point 2, in part, *Mauck v. City of Martinsburg*, 167 W.Va. 332, 280 S.E.2d 216 (1981).").

It is petitioner's contention that the circuit court erred in concluding that Respondent Thaw's statements are not capable of a defamatory meaning and were protected speech under the United States and West Virginia constitutions. Petitioner argues that the statements are defamatory as they tended to "'reflect shame, contumely, and disgrace'" upon him. *Long*, 176 W. Va. at 630, 346 S.E.2d at 780, syl. pt. 4, in part (quoting *Sprouse*, 158 W. Va. at 427, 211 S.E.2d at 679, syl. pt. 1, in part)). He argues further that, when considered in context, "[d]irect defamatory statements are not an absolute prerequisite to recovery, however, because defamation may also be accomplished through inference, implication, innuendo or insinuation." *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 706, 320 S.E.2d 70, 77 (1983). According to petitioner, Respondent Thaw's statements that he regretted letting petitioner "call the tune on when he quits," as petitioner was permitted to submit his resignation on the same day he was charged with a crime, and that "when this sort of crime occurs most people would report it immediately" are defamatory because they accuse petitioner, a mandatory reporter, of failing to timely report a sexual assault. Petitioner argues that, in fact, he had followed Board policy and had not violated any criminal law. Similarly, petitioner argues, Respondent Thaw's statement that he "apologize[s]" for voting to hire petitioner as principal at Capital High School and that "[i]t was the second worst mistake I ever made . . . and I've had nothing but complaints" is defamatory because it can only mean that Thaw finds petitioner to be unfit for his employment as an educator and principal.

We find no error. "'[C]ourts have held that statements of opinion are absolutely protected under the First Amendment and cannot form the basis for a defamation action. These courts also hold that whether a statement is one of fact or opinion is an issue that must be decided initially by a court.'" Syl. Pt. 3, in part, *Maynard v. Daily Gazette Co.*, 191 W. Va. 601, 447 S.E.2d 293 (1994) (quoting *Long*, 176 W. Va. at 630, 346 S.E.2d at 780, syl. pt. 7, in part). Indeed, "[a] statement of opinion which does not contain a provably false assertion of fact is entitled to full constitutional protection." *Maynard*, 191 W. Va. at 602, 447 S.E.2d at 294, syl. pt. 4. The challenged statements relate to Respondent Thaw's personal belief that he should not have voted

4

to hire petitioner as principal, his feeling of regret over the Board's decision to allow petitioner to resign on his own, and his opinion that other people in petitioner's position would have immediately reported the incident to police. The statements do not indicate that petitioner committed a crime. We, therefore, conclude that the statements reflect Respondent Thaw's feelings and opinions regarding his own judgment about petitioner, do not include provably false assertions of fact, are protected under the First Amendment, and cannot form the basis of a defamation claim. Accordingly, we find that the circuit court did not commit error in granting respondents' motion to dismiss petitioner's defamation claim.[5]

Petitioner next argues that the circuit court erred in dismissing his false light invasion of privacy claim. Petitioner argues that the circuit court erroneously relied on the elements of an invasion of privacy claim as set forth in *Benson v. AJR, Inc.*, 215 W.Va. 324, 599 S.E.2d 747 (2004), when, instead, the appropriate test in this case is found in *Restatement (Second) of Torts* § 652E (1977), which states:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.[6]

---

[5] In passing, petitioner also suggests that the challenged statements constitute defamation per se. Petitioner states simply that the statements "tend to injure [him] in his employment or profession" and "impute the existence of a criminal offense made all the more so when referring to a man who stands recently accused[.]" This Court has recognized that defamation *per se* means "'[a] statement that is defamatory in and of itself and is not capable of an innocent meaning.'" *Pritt v. Republican Nat. Comm.*, 210 W. Va. 446, 450 n.4, 557 S.E.2d 853, 857 n.4 (2001) (quoting Black's Law Dictionary 427 (7th ed. 1999)). Further, "[a]t common law, defamation *per se* includes only imputations of a crime of moral turpitude, imputations of a loathsome disease, imputations of sexual misconduct by a woman, and imputations which affect a business, trade, profession or office. *Restatement (Second) of Torts* §§ 571-74 (1977)." *Mauck*, 167 W. Va. at 336 n.3, 280 S.E.2d at 219 n.3. Absent any additional substantive argument in support of petitioner's claim that the challenged statements are defamation per se, we do not find that the statements meet either of these definitions.

[6] The circuit court applied the following elements of a false light claim, as noted in *Benson*:

> "'(1) that there was a public disclosure by the Defendant of facts regarding the Plaintiff; (2) that the facts disclosed were private facts; (3) that the disclosure of such facts is highly offensive and objectionable to a reasonable person of
(continued . . .)

5

(Footnote added).

Petitioner argues that the challenged statements were "false, were spoken at a minimum with reckless disregard for the truth, and were widely published thereafter on the evening news and beyond." Petitioner argues further that one such as him would find it to be highly offensive "to be mentioned as a person who violated the law by failing to report a sexual assault" when, in fact, petitioner followed the Board's policy.

We find no error and conclude that petitioner's false light invasion of privacy claim was properly dismissed. The fact that a sexual assault allegedly occurred at the school, that petitioner was charged with failing to timely report it to authorities, and that he was suspended without pay were fodder for the local news media six days before the challenged statements were made. In fact, in his amended complaint, petitioner alleged specifically that, beginning on February 3, 2015,

> news media, including print, television and radio . . . covered the story about [him] several times each day. The news coverage included commentary and quotes offered by local politicians, at least one lawyer whose opinions [sic] were erroneous, interviews of leading school officials, statements about the case and the specific charges offered by media personalities, a news conference conducted with the prosecuting attorney about Mr. Giles, statements from law enforcement officials, and at least one television interview with a victim advocate.

Indeed, it would be disingenuous to conclude that Respondent Thaw's statements on February 9, 2015, somehow "gave publicity" to these already widely publicized facts. Furthermore, as previously established, the statements are not provably false because they reflected Thaw's personal opinions, including his regret of having voted to hire petitioner and then allowing him to resign, and his belief that other people in petitioner's position would have reported the alleged sexual assault to police in a more timely manner. Based upon the foregoing, we conclude that the elements of a false light invasion of privacy claim were not satisfied and that the claim was properly dismissed.

For the foregoing reasons, we affirm.

Affirmed.

---

reasonable sensibilities; and (4) that the public has no legitimate interest in the facts disclosed.'"

215 W. Va. at 329, 599 S.E.2d at 752 (quoting *Davis v. Monsanto Co.*, 627 F.Supp. 418, 421 (S.D.W.Va. 1986) and *Restatement (Second) of Torts* § 652D (1977)). The circuit court concluded that the challenged statements could not "be found to have disclosed a private fact about Plaintiff Giles, a required element for a false light invasion of privacy claim. A review of Defendant Thaw's statements shows that Defendant Thaw may have disclosed private information about himself, but not about Plaintiff Giles."

**ISSUED:**  January 5, 2018

**CONCURRED IN BY:**

Chief Allen H. Loughry II
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**NOT PARTICIPATING:**

Justice Robin Jean Davis
Justice Margaret L. Workman