412 S.E.2d 749

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Barbara Burns, Plaintiffs Below, Appellants,**

v.

**SMOOT COAL COMPANY, INC., a West Virginia Corporation, and Paul F. Fazenbaker, Sr., President, Defendants Below, Appellees.**

**No. 20115.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Dec. 12, 1991.

---

Mary Catherine Buchmelter, Deputy Atty. Gen., Charleston, for appellant W.Va. Human Rights Com'n.

Betty Jean Hall, Dumfries, J. Davitt McAteer, Shepherdstown, Christine M. Hedges, Hedges, Jones, Whitter & Hedges, Spencer, for appellant Barbara Burns.

Terry D. Reed, Hymes & Coonts, Buchannan, Michael D. Farber, Sutton, for appellees.

PER CURIAM:

This is an appeal by the West Virginia Human Rights Commission and Barbara Burns from a judgment of the Circuit Court of Webster County in a proceeding to enforce a conciliation agreement in a sex discrimination case. On appeal, the appellants claim that the circuit court erred in refusing to enforce the conciliation agreement and by making certain rulings relating to the merits of the appellant Burns' human rights claims. After reviewing the record and the questions presented, this Court agrees that the circuit court erred in failing to enforce the conciliation agreement and reverses the decision of the circuit court on that point.

In April, 1984, Smoot Coal Company, Inc., hired the appellant, Barbara Burns, as a lab technician. The next year, in the Fall of 1985, she was promoted to the position of safety director. In the following year, she was promoted to the position of superintendent. While she was superintendent, Ms. Burns experienced a number of problems, including personal health problems and problems arising from her husband's developing kidney disease. In the Spring of 1986, she requested leave to deal with her problems. When the president of her employer, Paul Fazenbaker, refused to allow her several weeks off, she resigned as superintendent and resumed the position of Smoot Coal Company's safety director.

Shortly after she resumed the position of safety director, on May 23, 1986, Ms. Burns went on sick leave. While she was on sick leave, she underwent nasal surgery, and her husband underwent a kidney transplant. After she went on sick leave, the president of Smoot Coal Company started pressing her as to her intended date of return to work. Shortly thereafter, on or about July 15, 1986, Ms. Burns filed a complaint with the West Virginia Human Rights Commission in which she claimed that Smoot Coal Company, Inc., and its President, Paul F. Fazenbaker, had discriminated against her on the basis of sex by denying her equal pay. She also claimed that she had been sexually harassed by Mr. Fazenbaker.

Following the institution of the sex discrimination and harassment proceeding, Smoot Coal Company terminated Ms. Burns' employment and advised her that her health insurance was being canceled.

Following the termination of her employment, Ms. Burns filed a second Human Rights complaint, in which she alleged that Smoot Coal Company and Mr. Fazenbaker had wrongfully retaliated against her and committed direct acts of reprisal against her for filing her initial sex discrimination and harassment complaint.

After the filing of the retaliation complaint, Smoot Coal Company and Paul Fazenbaker entered into conciliation negotiations with Ms. Burns and the Human Rights Commission. The negotiations culminated in a predetermination conciliation agreement which was concluded on August 29, 1986. The conciliation agreement covered Ms. Burns' retaliatory-firing complaint only and did not cover her original sex discrimination and harassment complaint.[1]

While the negotiations relating to the retaliatory-firing complaint were being conducted, the Human Rights Commission proceeded to investigate the initial sex discrimination and harassment complaint.

By early January, 1987, problems arose over the implementation of the conciliation agreement. As required by the agreement, the Human Rights Commission contacted the Mine Safety and Health Administration about the designation of a representative to test Ms. Burns' competency in reading mine maps and calibrating and setting methane detectors and dust pumps. The Mine Safety and Health Administration advised the Human Rights Commission that it would not designate such a representative. Then, since it was impossible to perform in accordance with the letter of the agreement, Ms. Burns, in an effort to show her

1. The agreement provided that in exchange for Barbara Burns agreeing not to institute a lawsuit under Title VII of the Human Rights Act of 1964 based on her retaliatory complaint and the West Virginia Human Rights Commission agreeing not to process the complaint further, Smoot Coal Company and Paul F. Fazenbaker, its President, agreed:

1. To rescind the notice terminating Ms. Burns' employment and to rescind the termination of her health insurance;

2. To return her, at the same rate of pay, to the job she was holding when she took her leave of absence when her doctor released her unconditionally to return to work.

It was also agreed that Ms. Burns would demonstrate to the satisfaction of a duly authorized representative of the Mine Safety and Health Administration her ability to read a mine map and travel underground, her ability to calibrate a methane detector, and her ability to calibrate and set a dust pump.

The agreement further indicated that "the investigation of the original allegations of sexual harassment is continuing," and it stipulated that the Human Rights Commission would contact the Mine Safety and Health Administration and request that they designate a representative to test Ms. Burns as required by the agreement.

competency in the required areas, submitted old certificates from federal government agencies showing that she had completed courses in methane detector calibration and dust certification. She also submitted a sworn certificate from S.O. Black, the superintendent of a mine owned by BethEnergy, concluding that she was fully qualified to read a mine map and to travel underground. Smoot Coal Company refused to accept the documentation submitted by Ms. Burns and to restore her to employment. Consequently, on January 9, 1987, Ms. Burns and the West Virginia Human Rights Commission filed the present action in the Circuit Court of Webster County to compel Smoot Coal Company to comply with the conciliation agreement and to restore Ms. Burns to employment.

In conjunction with her complaint, Ms. Burns filed a letter from Dr. Moosa Kasmet, dated January 6, 1987, indicating that she was mentally and physically able to return to work on January 7, 1987. She also submitted the documentation previously mentioned indicating that she had successfully completed a course in dust certification at the National Mine Health and Safety Academy, a certificate from the United States Department of Labor dated December 18, 1986, indicating that she had completed the approved course in methane detector calibration, and a sworn statement dated December 12, 1986, from S.O. Black, Superintendent of BethEnergy Mine 81, indicating that she was fully qualified to read a mine map properly and to travel underground.

In response to the complaint, Smoot Coal Company filed an answer and a counterclaim. Count 1 of the counterclaim alleged that prior to and during the negotiations leading up to the time of the August 29, 1986, conciliation agreement, Ms. Burns had intentionally, willfully, deliberately, and fraudulently misrepresented the true state of her health, and that in reliance upon her statements, Smoot Coal Company had entered into the conciliation agreement. It, therefore, prayed that the court rule that it had the right to rescind the agreement. In Count 2 of the counterclaim, Smoot Coal Company alleged that Ms. Burns had breached the contract in that she had failed to establish satisfactorily the conditions precedent for Smoot to reinstate her. In Count 3, Smoot Coal Company claimed that Ms. Burns and the Human Rights Commission had entered into a civil conspiracy to deprive Smoot of its legal rights. In Count 4, Smoot Coal Company prayed that the court declare that by failing to provide Smoot with evidence relevant to her medical condition, Ms. Burns had provided Smoot with ample cause to terminate her employment.

Subsequently, the court took extensive evidence on the issues presented, and, after approximately two years of hearings and submissions of briefs and memoranda of law, the court, on September 6, 1990, issued an opinion that contained findings of fact and conclusions of law. In that opinion, the court stated that Ms. Burns failed to provide timely medical information regarding her medical condition. The court also concluded that Ms. Burns had breached the job-proficiency testing requirements of the August 29, 1986, conciliation agreement. The court stated that Ms. Burns was unqualified to be Smoot's health and safety director, and finally concluded that Ms. Burns' allegations of sexual harassment were false. The court then, after discussing the law, concluded that Smoot was entitled to judgment on its counterclaim.

To carry out the conclusions reached in the opinion, the circuit court, on September 25, 1990, entered the order from which the appellants now appeal. The court, in effect, denied the appellants' prayer that the conciliation agreement be legally enforced. The court also granted Smoot Coal Company judgment on Counts 1, 2, and 3 of its counterclaim and declared that Smoot was entitled to rescind the conciliation agreement and that, because of Ms. Burns' actions subsequent to the agreement, Smoot Coal Company was entitled to terminate her employment.[2]

---

**2.** The circuit court's order specifically provided that:

(1) Judgment is entered in favor of the defendants and against plaintiffs on plaintiff's Complaint;

■ The principal assignment of error by the appellants in the present proceeding is that the trial court erred in ruling that the appellant, Barbara Burns, had not fulfilled all her obligations under the conciliation agreement.

The fact that the appellant, Barbara Burns, had not fulfilled her obligations under the conciliation agreement was a principal reason for denying the appellant's specific performance of the conciliation agreement.

A careful examination of the conciliation agreement shows that conditions precedent to Smoot Coal Company's reinstating Ms. Burns, were: (1) that Ms. Burns obtain a doctor's statement relating her unconditionally to return to work; (2) that Ms. Burns demonstrate her ability to read a mine map and travel underground to the satisfaction of a duly authorized representative of the Mine Safety and Health Administration; (3) that Ms. Burns demonstrate her ability to calibrate a methane detector to the satisfaction of a duly authorized representative of the Mine Safety and Health Administration; and (4) that she demonstrate her ability to calibrate and set a dust pump to the satisfaction of a duly authorized representative of the Mine Safety and Health Administration.

As previously indicated, it became impossible for Ms. Burns to comply with the letter of the conciliation agreement because the Mine Safety and Health Administration refused to designate a representative to test Ms. Burns. However, in an attempt to comply with the conditions precedent in the agreement, Ms. Burns submitted the fol-

(2) The Preliminary Injunction entered herein on March 4, 1986 pursuant to said Complaint is hereby dissolved, effective as of June 30, 1988, and defendant Smoot Coal Company, Inc.'s ("Smoot") Motion to Modify the Order of the Circuit Court of Webster County, West Virginia Entered on March 4, 1986, to provide for such dissolution, is hereby granted [The said preliminary injunction order, which was actually entered on March 4, 1987, rather than March 4, 1986, as indicated by the court, was entered by the court with the consent of the parties. It directed Smoot Coal Company to restore Ms. Burns to the benefits which she received on May 23, 1986, pending resolution of the case.]

(3) Plaintiff's Petition to Hold Defendant Smoot in Contempt of Court for claimed violation of March 4, 1986 Preliminary Injunction is hereby denied.

AND IT IS FURTHER ORDERED and ADJUDGED that:

(1) Judgment is entered in favor of counter-plaintiff Smoot and against counter-defendant Barbara Burns ("Burns") on Counts 1, 2, and 4 of Smoot's Counterclaim;

(2) Judgment is entered in favor of counter-defendant Burns and against counter-plaintiff Smoot on Count 3 of Smoot's Counterclaim;

(3) Judgment is entered in favor of counter-defendant West Virginia Human Rights Commission ("HCR") and against counter-plaintiff Smoot on Counts 3 and 4 of Smoot's Counterclaim;

(4) The Court has determined and hereby declares, in accordance with Count 1 of Smoot's Counterclaim, that Smoot is entitled to rescind the August 29, 1986 contract sued upon in plaintiff's Complaint and to terminate the employment relationship between itself and Burns;

(5) The Court has determined and hereby declares, in accordance with Count 2 of Smoot's Counterclaim, that by virtue of the various material breaches of her contractual obligations under the August 29, 1986 contract sued upon in plaintiff's Complaint, Smoot is and has been, at all times subsequent to the commission of such breaches, entitled to rescind said contract and to terminate the employment relationship between itself and Burns;

(6) The Court has determined and hereby declares, in accordance with Count 4 of Smoot's Counterclaim, that by virtue of demands respecting production of medical documentation, submission to medical examinations and submission to job competency testing, Smoot is and has been, at all times subsequent to Burns' aforesaid failure and refusal, entitled to terminate the employment relationship between itself and Burns, and Barbara Burns, and all persons acting in concert and privity therewith, are hereby permanently restrained and enjoined from engaging in any conduct, excepting participation in legal proceedings, having the purpose of effect of obstructing or otherwise interfering with Smoot's termination of its employment relationship with Burns;

(7) The Court further declares that Burns shall not be liable to Smoot for any remuneration paid to Burns pursuant to the order of this Court entered on March 4, 1986.

AND IT IS FURTHER ORDERED and ADJUDGED that the parties to this action shall each bear their own costs and expenses, including counsel fees.

lowing documentation: (1) a letter from Dr. Moosa Kasmet dated January 6, 1987, indicating that she was mentally and physically competent to return to work on January 7, 1987; (2) a sworn statement from S.O. Black, Superintendent of BethEnergy Mine 81, indicating that she was fully qualified to read a mine map and travel underground; (3) certification from the Mine Safety and Health Administration indicating that she had completed the approved course in methane detector calibration; and (4) a certificate from the National Mine Health and Safety Academy indicating that she had successfully completed the course in "Dust Certification."

■ It has been recognized in a number of jurisdictions that perfect performance is not required with every contract, but that recovery may be had on a contract which has been substantially performed and that only a material failure of performance by one party discharges the other. This rule essentially was drawn into West Virginia's law in the case of *Eastern Oil Company v. Coulehan*, 65 W.Va. 531, 64 S.E. 836 (1909). In that case, the Court indicated, in syllabus point 6, that:

Where before the time has expired for the performance of a contract, there has been such a substantial compliance therewith by a party thereto, that gross injustice would be done him by denying him relief, equity will grant him relief as from a forfeiture.

■ In examining the facts in the case presently before the Court, the material questions presented by the conditions precedent imposed in the conciliation contract on Ms. Burns were whether Ms. Burns was, first, physically capable of working and performing the job to which she wished to be returned and, secondly, whether she had the technical competence to read a mine map, manage a methane detector, and manage a dust pump, as was and would be required in her job as safety director for Smoot Coal Company, Inc. The imposition of the requirement that she be medically certified to return to work and that she be able to perform the requisite activities to the satisfaction of a representative appointed by the Mine Safety and Health Administration were strictures obviously placed in the contract to insure that Ms. Burns' medical condition was properly judged and that her technical competency was appropriately assessed.[3]

3. The appellees, Smoot Coal Company, Inc., and Paul F. Fazenbaker, on appeal, claim that Ms. Burns had mental problems, which she concealed, in addition to her physical problems. They argue that the concealment of those problems constituted fraud which should support the trial court's recision of and refusal to enforce the conciliation agreement.

In syllabus point 1 of *Home Gas Co. v. Mannington Cooperative Window Glass Co.*, 63 W.Va. 266, 61 S.E. 329 (1907), this Court said:

To justify recision of a contract for fraudulent representation in procurement thereof, such representation must be a positive statement of a material existing fact, present or past, made for the purpose of procuring the contract, and actually relied on by the other party, who must be misled thereby.

For there to be fraud of such a substantial character in the present case to support denial of relief to the appellants, this Court believes that Ms. Burns must have made a substantial misrepresentation of fact concerning her medical condition, and those misrepresentations must have been of such a material nature as to have induced the appellee to have entered into the conciliation agreement.

Rather clearly, the appellees were under threat of sanctions for retaliatory firing and a federal human rights action at the time they entered into the conciliation agreement. Certainly, a principal material consideration for their entering into agreement was to avoid such sanctions and action. Although the health of Ms. Burns was a justifiable concern in determining whether or when she should be restored to employment, the clear focus of the agreement was on her medical condition at the future time when she would seek to return. The agreement indicated that she would have to be released unconditionally to return to work before she could be restored to employment.

In this Court's view, the overall circumstances of this case indicate that the condition of Ms. Burns' health prior to entering into the agreement was not such a significant or material factor in the agreement as was her condition at the time when she would be seeking to return to employment.

Overall, the Court does not believe that the record shows such fraud as would, in the contemplation of the law, support recision of the agreement. The Court also believes that Ms. Burns presented satisfactory medical evidence showing that she had been unconditionally released to return to work when she sought to return under the terms of the agreement.

As previously indicated, the refusal of the Mine Safety and Health Administration to appoint a representative to assess Ms. Burns' competency in the designated areas rendered it impossible for Ms. Burns to comply strictly with the conditions imposed upon her by the conciliation agreement.

It appears that in an effort to comply substantially with the conditions imposed upon her, Ms. Burns attempted to produce certification as close to that required by the contract as possible. She produced a certificate from the United States Department of Labor Mine Safety and Health Administration indicating that she had completed an approved course in methane detector calibration, and she further produced a certificate from the National Mine Health and Safety Academy showing that she had successfully completed a course in dust certification. To show that she was fully qualified to read a mine map and to travel underground, she produced a sworn statement from the superintendent of a mine, an individual who normally is highly skilled in the reading of mine maps and in travelling underground, indicating that she was fully qualified to read a mine map properly and to travel underground.

In this Court's view, Ms. Burns made a significant effort to substantially comply with the performance requirements imposed upon her by the conciliation agreement and produced substantial evidence that she was medically capable of returning to work and technically qualified to carry out the jobs which she would be required to do in the position to which she sought reinstatement. To hold that she would be entitled to no relief because she failed to comply perfectly with the letter of the agreement, in view of her attempt at substantial compliance and in view of the fact that perfect performance was frustrated by Ms. Burns' impossibility of securing designation of an employee of the Mine Safety and Health Administration to test her, in this Court's view would result in gross injustice and, in effect, would result in a forfeiture of Ms. Burns' rights.

■ In view of these circumstances, this Court believes that, in view of the rule set forth in syllabus point 6 of *Eastern Oil Company v. Coulehan, Id.*, the trial court erred in granting Smoot Coal Company, Inc., judgment on its counterclaim in this matter and in refusing to grant the appellants, the West Virginia Human Rights Commission and Barbara Burns, an order compelling Smoot Coal Company to reinstate her in her employment as specified in the conciliation agreement.[4]

4. The Court notes that the appellants claim, and expend great energy, in arguing that the circuit court erred in restraining the appellant Human Rights Commission from proceeding with the sex discrimination and harassment case of appellant Barbara Burns. In like vein, they argue that the circuit court exceeded its jurisdiction when it ruled that Barbara Burns had not been sexually harassed.

After carefully examining the circuit court's final order dated September 25, 1990, the mandate of which is set out in its totality in note 2 of this opinion, this Court cannot see, in that order, from which the present appeal is being taken, that the circuit court has restrained the appellant Human Rights Commission from proceeding with the sex discrimination/sexual harassment case of Barbara Burns.

From the briefs in this case, as well as from some passing references in the record, it appears that Smoot Coal Company, Inc., and Paul Fazenbaker filed a wholly separate proceeding in the Circuit Court of Webster County to restrain further proceedings on the sexual harassment complaint filed by appellant Barbara Burns, as well as on a complaint filed by another employee, Mandy Morris, until the present proceeding was concluded. Apparently, the temporary injunction sought was issued. So far as this Court can determine after perusing the thousands of pages of record in this case, that separate proceeding, although related to the present one, was never consolidated with the present one and really is not before this Court in the present appeal. Given this circumstance, this Court cannot see how the circuit court, in the present proceeding, erred in failing to dissolve the temporary injunction issued in the other wholly separate proceeding. It is true that in its opinion the trial court found that Smoot Coal Company, Inc., and Paul Fazenbaker had not sexually harassed Ms. Burns, but that finding was incorporated in the court's opinion, and not its mandate. Given the nature of the mandate, this Court believes that the language in the opinion relating to harassment was mere surplusage, and in line with this Court's holding in *Moran v. Clark*, 30 W.Va. 358, 4 S.E. 303 (1887), this Court does not believe its insertion in the opinion constitutes a ground for reversal.

Rather clearly, the conciliation agreement in the present case left the initial sexual harassment complaint filed by Barbara Burns open,

For the reasons stated, the judgment of the Circuit Court of Webster County is reversed and this case is remanded with directions that the court enter an order granting the appellants relief on the conciliation agreement which is at the heart of this matter.[5]

Reversed and remanded with directions.

and the pleadings in the present case had nothing to do with that complaint. Under the rule in *Kell v. Cumby*, 124 W.Va. 357, 20 S.E.2d 461 (1942), that the award of relief different from that sought in the complaint constitutes reversible error, this Court believes that it would have been improper for the circuit court to have concluded the appellants' rights relative to the discrimination complaint in the present proceeding, but as previously indicated, this Court cannot see how, in the present proceeding the circuit court concluded the appellants' rights on the discrimination complaint.

If the appellants wish to dissolve the temporary injunction in the wholly separate proceeding instituted by Smoot Coal Company, Inc., and Paul Fazenbaker, they should file the appropriate motion in the proceeding in which that injunction was issued. If they wish to appeal the court's action, they should do so in conjunction with the record of that proceeding.

5. After presenting their appeal, the appellants submitted a supplemental reply brief in which they alleged that certain of the officers of Smoot Coal Company and related corporations had been attempting, since the filing of the appeal, to perpetrate a fraud on the court and defeat their possibility of collection by draining assets from Smoot Coal Company. They make many factual allegations which are not in the present record. In this Court's opinion, it would be inappropriate to consider those factual allegations in the present proceeding.