698 S.E.2d 638

Danny L. BENSON, Plaintiff
Below, Appellee,

v.

AJR, INC., a West Virginia Corporation,
and John M. Rhodes, Defendants
Below, Appellants.

No. 34748.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 13, 2010.

Decided Jan. 28, 2010.

Niall A. Paul, Eric E. Kinder, Spilman Thomas & Battle, PLLC, Charleston, WV, for Appellants.

Walt Auvil, Rusen & Auvil, PLLC, Parkersburg, WV, for Appellee.

PER CURIAM:

The appellants herein and defendants below, AJR, Inc., and John M. Rhodes (hereinafter collectively referred to as "AJR"), appeal from an order entered July 18, 2008, by the Circuit Court of Wood County. By that order, the circuit court entered judgment in favor of the appellee herein and plaintiff below, Danny L. Benson (hereinafter referred to as "Mr. Benson"), in the amount of $94,910.25, following a jury trial of Mr. Benson's claims against AJR to enforce the terms of his employment contract subsequent to his termination. On appeal to this Court, AJR contends that the circuit court did not follow the mandate issued by this Court in the earlier appeal of this case in *Benson v. AJR, Inc.*, 215 W.Va. 324, 599 S.E.2d 747 (2004) (per curiam) (*Benson I*), and that the circuit court improperly entered judgment in favor of and awarded damages to Mr. Benson. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we affirm the decision of the Wood County Circuit Court.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The instant proceeding constitutes the third time these parties have been before

this Court with respect to the instant controversy involving Mr. Benson's employment contract with AJR. To understand the case currently before the Court, it is necessary to briefly review the underlying facts.[1]

Mr. Benson is a welder, and he was employed by AJR, a corporation which manufactures and welds truck beds. When the company was sold in 1997, Mr. Benson entered into an "Employment Agreement" with AJR by the company's new owner, John Rhodes.[2] Under the terms of the Employment Agreement,

> Mr. Benson would be guaranteed employment for a period of eight years beginning on August 29, 1997.[3] While AJR had the right to terminate [Mr. Benson] with only one day's written notice under this agreement, it was required to continue paying Mr. Benson his salary for the balance of the eight-year term of employment in the absence of three specified conditions. Those conditions were (a) dishonesty; (b) conviction of a felony; and (c) voluntary termination of the agreement by [Mr. Benson].

*Benson v. AJR, Inc.,* 215 W.Va. 324, 325–26, 599 S.E.2d 747, 748–49 (2004) (per curiam) (*Benson I*) (original footnotes omitted; new footnote added).

Subsequently, on March 2, 1998, AJR conducted a random drug test of all of its employees. While awaiting the test results,

> Mr. Rhodes conducted meetings with various AJR personnel during which he inquired of those in attendance whether anyone was aware of an employee who was using illegal drugs or who was arriving at work with illegal drugs or alcohol in their system. [Mr. Benson] attended one of those meetings and admits that he did not respond to this question despite personal knowledge that his drug test would come back positive.

*Benson I,* 215 W.Va. at 326, 599 S.E.2d at 749 (footnotes omitted). Mr. Benson, who claims to have first used cocaine on the Saturday before the Monday morning when the test was administered, ultimately had a positive test result for cocaine. His test result was more than three times the limit established by the United States Department of Transportation to indicate drug use and impairment. *Id.*

Thereafter, AJR terminated Mr. Benson on March 6, 1998.[4] On Mr. Benson's "Employment Termination" form, the "Reason for Termination" is listed as "Controlled Substance Testing" ... "Tested Positive for Cocaine." Mr. Benson's "Job Function" at the time of his termination was "Supervisor, Special Projects, Steel & Safety."[5] Nearly one year later, on March 4, 1999, Mr. Benson filed a complaint in the Circuit Court of Wood County, West Virginia, asserting two causes of action against AJR and Mr. Rhodes: breach of contract and false light invasion of privacy. By order entered July 23, 2002, the circuit court granted summary judgment in favor of AJR and Mr. Rhodes, and against Mr. Benson, on both of Mr. Benson's claims. Specifically, the circuit court found that

> [Mr. Benson's] actions show that he was dishonest. [Mr. Benson] knowingly engaged in an illegal activity. [Mr. Benson] knowingly arrived at work with cocaine in

---

1. For a more detailed recitation of the salient facts, see generally *Benson v. AJR, Inc.,* 215 W.Va. 324, 599 S.E.2d 747 (2004) (per curiam) (*Benson I*).

2. Mr. Rhodes acquired AJR from Mr. Benson's relatives, including Mr. Benson's father.

3. The sale of AJR to Mr. Rhodes was completed on August 29, 1997.

4. At the same time that Mr. Benson was terminated, eleven other AJR employees who had tested positive for drug use also were terminated. The "AJR, Inc. Employee Manual" specifically states, in the section entitled "Causes for Termination or Disciplinary Action," that "[a]n em-

ployee may be terminated for" specified reasons, including the "[s]ale, possession or use of controlled substances (as defined in our Controlled Substance Policy) except as prescribed by a licensed physician, or any use of alcohol while on the job or during working hours or while on company business." Mr. Benson acknowledged that he had received AJR's employee manual, as well as a "Drug Testing Consent form," on September 26, 1997.

5. In his August 29, 1997, Employment Agreement with AJR, Mr. Benson's job "Duties" are listed as "welder and leadhand."

his system. [Mr. Benson] knowingly violated AJR's drug-free workplace policy— which he knew would result in his immediate discharge. [Mr. Benson's] demonstrated dishonesty relieved AJR of its obligation to continue to pay [Mr. Benson] under the employment agreement.

The circuit court also found in favor of AJR on Mr. Benson's claim that AJR's disclosure of his positive drug test results to three individuals, all of whom were employees, managers, or creditors of the corporation, constituted false light invasion of privacy. In short, the circuit court determined that AJR had not acted with bad intent in disclosing Mr. Benson's test results and that Mr. Benson had failed to satisfy the requisite elements of this claim. As for AJR's contentions that "[Mr. Benson] may not recover for breach of contract because he materially breached his employment contract" and that such a determination requires resolution by a jury, the circuit court ruled that "[b]ecause this Court's other holdings render this issue moot, the Court does not address [AJR's] breach of contract defense to [Mr. Benson's] Motion for Summary Judgment."

On the first appeal of this case to this Court, Mr. Benson complained that the circuit court had erred by ruling in favor of AJR on both of his causes of action. In *Benson I*, 215 W.Va. 324, 599 S.E.2d 747, we determined that whether drug use constituted dishonesty so as to preclude Mr. Benson from recovering under his Employment Agreement upon his termination by AJR was a question of fact that should be decided by a jury and, thus, reversed the circuit court's ruling on this issue and remanded the same for jury determination:

> The record in this case is unclear as to whether AJR dismissed Mr. Benson from its employ for drug use or for dishonesty. As [Mr. Benson] emphasizes in his argument, nowhere on either of the two termination forms that were introduced below is there any indication that he was dismissed for dishonesty.[6] We are unwilling to make the leap that the trial court did to

broadly encompass testing positive for drug use within the meaning of the term "dishonesty." Consequently, we conclude that [Mr. Benson] is entitled to have a jury determine the basis for AJR's decision to terminate [him] from its employ. If the jury determines that drug use, rather than dishonesty, was the basis for the dismissal, then the provisions of the employment contract with regard to continued payment of [Mr. Benson's] salary for the duration of the contract term are applicable. If, however, the jury determines that Mr. Benson was in fact terminated for being dishonest, then AJR is not required to pay his salary under the terms of the employment contract.

*Benson I*, 215 W.Va. at 328, 599 S.E.2d at 751 (original footnote omitted; new footnote added). However, we affirmed the circuit court's conclusion that Mr. Benson was not entitled to recover on his false light invasion of privacy claim. *Id.*, 215 W.Va. at 329, 599 S.E.2d at 752.

On remand to the Circuit Court of Wood County, a jury trial was held. The jury rendered its verdict on October 20, 2005, by answering two general verdict questions and two special interrogatory queries. The general verdict questions, and the jury's responses thereto, stated:

### GENERAL VERDICT

We, the jury, find by a preponderance of the evidence in this case that the Defendants AJR, Inc. and John M. Rhodes materially breached the terms of the employment contract and find in favor of the Plaintiff Danny L. Benson and against the Defendants AJR, Inc. and John M. Rhodes.

———————

FOREPERSON

We, the jury, find by a preponderance of the evidence in this case that the Plaintiff Danny L. Benson materially breached the terms of the employment contract and find

6. In addition to the termination form indicating that AJR terminated Mr. Benson's employment as a result of his positive drug test, AJR had, at the time of Mr. Benson's termination, prepared a

second termination form permitting Mr. Benson to voluntarily resign his employment. Mr. Benson declined to sign the voluntary resignation termination form.

in favor of the Defendants AJR, Inc. and John M. Rhodes and against the Plaintiff Danny L. Benson.

/s/ Keith C. Neely
FOREPERSON

In addition to the general verdict, two special interrogatories requested the jury to determine the specific reason relied upon by AJR in terminating Mr. Benson. The special interrogatories, and the jury's responses thereto, provided:

### SPECIAL INTERROGATORIES

We, the jury, find as follows:

Was the reason that the Plaintiff Danny L. Benson was terminated from his employment for being dishonest?

Yes _____ No X

Was the reason that the Plaintiff Danny L. Benson was terminated from his employment for drug use rather than dishonesty?

Yes X No _____

/s/ Keith C. Neely
FOREPERSON

Nearly two years after the conclusion of the jury trial, the circuit court entered its final "Order Entering Judgment" on September 14, 2007.[7] Based upon the jury's verdicts, the circuit court ruled that

judgment should be ordered in favor of the Defendants [AJR, Inc., and John M. Rhodes] and against the Plaintiff [Danny L. Benson] on the issue of material breach submitted to the jury on the general verdict form. Further, judgment should be entered in favor of the Plaintiff [Danny L. Benson] and against the Defendants [AJR, Inc., and John M. Rhodes] on whether dishonesty was the basis for the Plaintiff's [Danny L. Benson's] termination versus drug testing.

AJR objected to the circuit court's entry of judgment contending that, because the jury had determined that Mr. Benson had materially breached his employment contract with

AJR, AJR had been relieved of performance under the contract, and, thus, Mr. Benson was not entitled to recover thereunder. In support of its position, AJR filed a petition for writ of mandamus with this Court on January 18, 2008, requesting this Court to compel the circuit court to enter judgment in favor of AJR based upon the jury's finding that Mr. Benson had materially breached his employment contract. Although this Court issued a rule to show cause, we dismissed the proceeding when the circuit court entered its "Stipulation and Order" on July 18, 2008. By its order, the circuit court found that Mr. Benson and AJR and Mr. Rhodes

have agreed and hereby stipulate that the amount of damages [Mr. Benson] has allegedly suffered is in the amount of $94,910.25. These damages are calculated as follows:

| 1998 | $41,210-$7,967 in earned wages-$8,310.75' (25% offset for [Mr. Benson's] failure to mitigate his damages) = $24,932.25 |
| 1999 | $41,210-$19,431 in earned wages = $21,779.00 |
| 2000 | $41,210-$27,695 in earned wages = $13,515.00 |
| 2001 | $41,210-$32,042 in earned wages = $ 9,168.00 |
| 2002 | $41,210-$32,387 in earned wages = $ 8,823.00 |
| 2003 | $41,210-$31,204 in earned wages = $10,006.00 |
| 2004 | $41,210-$34,523 in earned wages = $ 6,687.00 |
| 2005 | (through 8/28/05) = $27,473.87-$36,188 in earned wages = $0.00 |

[AJR and Mr. Rhodes] object that the entry of judgment in favor of [Mr. Benson] on the issue of liability is contrary to the law and the verdict rendered by the jury at the trial of this matter.

Being informed of the stipulation of the parties and noting [AJR and Mr. Rhodes'] objections, the Court hereby **ORDERS** that [Mr. Benson] has suffered damages in the amount of $94,910.25.

From this order, AJR and Mr. Rhodes appeal to this Court.

## II.

### STANDARD OF REVIEW

■ On appeal to this Court, AJR complains that the circuit court did not follow the mandate issued by this Court in *Benson I* and that the circuit court improperly entered judgment in favor of and awarded damages

---

**7.** It is not apparent from the record what occasioned the delay between the rendering of the

jury's verdict and the entry of judgment thereon.

to Mr. Benson. With respect to AJR's first assignment of error regarding the circuit court's adherence to this Court's mandate, we previously have held that "[a] circuit court's interpretation of a mandate of this Court and whether the circuit court complied with such mandate are questions of law that are reviewed *de novo.*" Syl. pt. 4, *State ex rel. Frazier & Oxley, L.C. v. Cummings,* 214 W.Va. 802, 591 S.E.2d 728 (2003).

 Furthermore, insofar as AJR also contends that the circuit court erroneously entered judgment in favor of and awarded damages to Mr. Benson following the jury's return of its verdicts, we accord circuit courts substantial deference in rendering their rulings. Thus,

> [a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. pt. 5, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966). *Accord* Syl. pt. 2, *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973) ("On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court."); Syl. pt. 4, *Pozzie v. Prather,* 151 W.Va. 880, 157 S.E.2d 625 (1967) ("An appellant or plaintiff in error must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment."); Syl. pt. 2, *Shrewsbury v. Miller,* 10 W.Va. 115 (1877) ("An Appellate Court will not reverse the judgment of an inferior court unless error affirmatively appear upon the face of the record, and such error will not be presumed, all the presumptions being in favor of the correctness of the judgment."). Mindful of these standards, we proceed to consider the errors assigned by AJR.

## III.

## DISCUSSION

In its appeal to this Court, AJR assigns three errors: (1) the circuit court did not follow this Court's mandate in *Benson I;* (2) the circuit court erroneously entered judgment in favor of Mr. Benson; and (3) the circuit court improperly awarded damages to Mr. Benson. We will address each of these errors in turn.

### A. Circuit Court Erred By Ruling that Remand was Limited to A Sole Issue

 AJR first argues that the circuit court erred by determining that this Court's remand of the case was limited to resolving the sole issue of the reason relied upon by AJR in terminating Mr. Benson. In other words, AJR asserts that because neither the circuit court nor this Court previously had ruled upon the merits of AJR's defense alleging that Mr. Benson had materially breached his employment contract with AJR, it was entitled to have this issue decided by a jury. *Citing Milner Hotels, Inc. v. Norfolk & W. Ry. Co.,* 822 F.Supp. 341, 345 (S.D.W.Va. 1993), *aff'd,* 19 F.3d 1429 (4th Cir.1994) (unpublished table decision). Moreover, AJR contends that it has a constitutional right to assert its affirmative defenses to Mr. Benson's breach of contract claim, including that he materially breached said contract, and to present its theory of the case for resolution by a jury on remand. *Citing Catlett v. MacQueen,* 180 W.Va. 6, 11, 375 S.E.2d 184, 189 (1988) (per curiam).

Mr. Benson rejects AJR's argument on this point and suggests that AJR is essentially asking this Court to rewrite the parties' employment contract "to include a basis for avoidance of the liquidated damages clause which the parties did not choose to incorporate in the original agreement." Appellee's Resp. Br. at p. 12.

At issue in this assignment of error is whether the circuit court followed the mandate issued by this Court in *Benson I.* In *Benson I,* we recognized that "a genuine

issue of material fact requires jury resolution on the breach of employment claim," 215 W.Va. at 329, 599 S.E.2d at 752, necessitating that the summary judgment ruling of the circuit court be reversed and the case be remanded "to permit proceedings consistent with the rulings herein stated," *id.* More specifically,

> we conclude[d] that [Mr. Benson] is entitled to have a jury determine the basis for AJR's decision to terminate [him] from its employ. If the jury determines that drug use, rather than dishonesty, was the basis for the dismissal, then the provisions of the employment contract with regard to continued payment of [Mr. Benson's] salary for the duration of the contractual term are applicable. If, however, the jury determines that Mr. Benson was in fact terminated for being dishonest, then AJR is not required to pay his salary under the terms of the employment contract.

215 W.Va. at 328, 599 S.E.2d at 751 (footnote omitted).

■ Once the case had been remanded to the circuit court for further proceedings, the circuit court was bound to follow the parameters of this Court's mandate:

> Upon remand of a case for further proceedings after a decision by this Court, the circuit court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.

Syl. pt. 3, *State ex rel. Frazier & Oxley, L.C. v. Cummings,* 214 W.Va. 802, 591 S.E.2d 728. From the language quoted above, it is clear that this Court's intent in *Benson I* was to remand the matter for a factual determination, by a jury, of the reason relied upon by AJR in terminating Mr. Benson. Given the language of the parties' Employment Agreement, the determination of this fact is critical to deciding whether Mr. Benson is entitled to receive his salary from AJR for the remainder of his contractual term.

While a solitary issue was identified for purposes of remand, this Court did not specify how such an issue should be tried or decided. *Cf.* Syl. pt. 2, *Frazier & Oxley, L.C.,* 214 W.Va. 802, 591 S.E.2d 728 ("When this Court remands a case to the circuit court, the remand can be either general or limited in scope. Limited remands explicitly outline the issues to be addressed by the circuit court and create a narrow framework within which the circuit court must operate. General remands, in contrast, give circuit courts authority to address all matters as long as remaining consistent with the remand."). Rather, insofar as *Benson I* had been appealed to this Court from the circuit court's entry of summary judgment in favor of AJR, neither party had been afforded the opportunity to present its various theories of the case or any defenses upon which it may have relied to avoid liability under the contract. Thus, our remand of the case permitted the parties to start anew with their arguments on Mr. Benson's breach of contract claim, which enabled them to assert any theories of the case and any defenses thereto during the jury trial of this matter. *See* Syl. pt. 2, *Morris v. Parris,* 110 W.Va. 102, 157 S.E. 40 (1931) (" 'Where conflicting theories of a case are presented by the evidence, each party is entitled to have his view of the case presented to the jury by proper instruction.' *Whitmore v. Rodes,* 103 W.Va. 301[, 137 S.E. 747 (1927) ].").

Our review of the record in this case suggests that, on remand, the circuit court precisely followed this Court's mandate in *Benson I.* Because the issue to be determined by the jury involved the reason for AJR's termination of Mr. Benson and because this issue had not previously been litigated, both parties were afforded the opportunity to present their theories of the case and both parties were permitted to assert any defenses that would relieve them of liability under the parties' Employment Agreement. While AJR complains that it was not permitted to assert its affirmative defense that Mr. Benson materially breached his employment contract with AJR, we reject such a contention because the record does not support AJR's argument. Rather than being denied its opportunity to assert this affirmative defense, the jury verdict form specifically asked the jury to decide this question, and it did so in

AJR's favor. As will be explained more fully in Sections III.B. and III.C., *infra*, though, merely because AJR successfully asserted an affirmative defense does not automatically relieve it of its obligation to pay damages under the subject contract. Therefore, because the circuit court properly followed the mandate of this Court upon the remand of *Benson I* and tried the case before the jury consistently with this Court's instructions, we find no error and, accordingly, affirm the circuit court's rulings in this regard.

### B. Circuit Court Erred by Refusing to Enter Final Judgment in Favor of AJR

AJR next argues that the circuit court erred by refusing to enter final judgment in favor of AJR when the jury's general verdict was rendered in its favor, finding that Mr. Benson had materially breached his contract of employment with AJR. Once Mr. Benson materially breached his employment contract, AJR suggests that the employment relationship between Mr. Benson and AJR ceased being governed by this contract and became, instead, an at-will employment relationship. Because AJR could terminate Mr. Benson, as an at-will employee, for any reason, AJR states that the circuit court erred by refusing to enter final judgment in favor of AJR insofar as it had been relieved of its obligations under its former employment contract with Mr. Benson. By entering judgment for Mr. Benson on the jury's special interrogatories, AJR claims that the circuit court essentially ignored and nullified the jury's general verdict rendered in its favor when no inconsistency between these verdicts rendered the general verdict a nullity.

Mr. Benson responds that AJR's characterization of the jury's verdicts is erroneous. Although the material breach inquiry of the jury was phrased as a "general verdict," the circuit court did so only at the insistence of AJR. Rather, the "special interrogatories" are the only salient inquiries that the jury was instructed to resolve on remand pursuant to this Court's mandate in *Benson I*. Thus, Mr. Benson contends that the circuit court correctly determined that the jury's finding that AJR had terminated him based upon his drug use, and not for dishonesty, entitled him to recover damages from AJR under the parties' employment contract.

■ Once the trial of the case on remand had been concluded, the circuit court permitted the jury to render its factual findings through both a general verdict form and special interrogatories. With respect to jury verdict forms, we previously have held that, "[g]enerally, the verdict form used in a typical, nonbifurcated, civil trial should ask the jury to decide issues related to liability prior to deciding the issues relating to damages." Syl. pt. 7, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000). In this case, the circuit court's use of a general verdict form and special interrogatories did precisely what this Court had counseled it to do. The general verdict form asked the jury to determine whether Mr. Benson had materially breached his employment contract to determine liability under the contract. Then, the special interrogatories asked the jury to decide whether, under the specific terms of the contract, AJR was relieved of its obligation to pay damages under the contract based upon its reason for terminating Mr. Benson's employment.

■ To achieve this end, the circuit court employed special interrogatories to obtain the jury's answers to the factual questions identified in *Benson I* as requiring jury resolution, *i.e.*, whether AJR fired Mr. Benson because of his drug use or because of his dishonesty. *See* 215 W.Va. at 328, 599 S.E.2d at 751. "As a general rule, a trial court has considerable discretion in determining whether to give special verdicts and interrogatories to a jury unless it is mandated to do so by statute." Syl. pt. 8, *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995), *modified on other grounds by Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996). Despite the deference accorded to circuit courts in this regard, we nevertheless have admonished that, "[w]here not required by statute, special interrogatories in aid of a general verdict should be used cautiously and only to clarify rather than to obfuscate the issues involved." Syl. pt. 16, *Carper v. Kanawha Banking & Trust Co.*, 157 W.Va. 477, 207

S.E.2d 897 (1974). Upon the record designated for appellate consideration, we find that the circuit court carefully and properly utilized the general verdict form and special interrogatories to the jury as anticipated by this Court's prior holdings and, that, following the jury's verdict, the circuit court correctly entered judgment in accordance therewith.

In submitting the case to the jury, the circuit court first asked the jury to resolve a general verdict inquiry to determine liability under the parties' Employment Agreement. The general verdict form queried, and the jury responded, as follows:

### GENERAL VERDICT

We, the jury, find by a preponderance of the evidence in this case that the Defendants AJR, Inc. and John M. Rhodes materially breached the terms of the employment contract and find in favor of the Plaintiff Danny L. Benson and against the Defendants AJR, Inc. and John M. Rhodes.

---

FOREPERSON

We, the jury, find by a preponderance of the evidence in this case that the Plaintiff Danny L. Benson materially breached the terms of the employment contract and find in favor of the Defendants AJR, Inc. and John M. Rhodes and against the Plaintiff Danny L. Benson.

/s/ Keith C. Neely
FOREPERSON

In summary, the jury returned its general verdict in favor of AJR, having found that Mr. Benson materially breached his contract of employment with AJR.

Despite AJR's successful assertion of its material breach of contract defense, and the circuit court's entry of judgment in favor of AJR thereon, the pivotal issue determinative of contract damages was not answered by this general verdict form. Thus, in submitting the case to the jury, the circuit court posed two additional questions, via special interrogatories, to obtain the jury's findings

8. *See supra* note 5.

on the factual issues determinative of Mr. Benson's claim for damages under his Employment Agreement with AJR. The two special interrogatories asked the jury to determine the reason relied upon by AJR in deciding to terminate Mr. Benson's employment:

### SPECIAL INTERROGATORIES

We, the jury, find as follows:

Was the reason that the Plaintiff Danny L. Benson was terminated from his employment for being dishonest?

Yes _____ No __X__

Was the reason that the Plaintiff Danny L. Benson was terminated from his employment for drug use rather than dishonesty?

Yes __X__ No _____

/s/ Keith C. Neely
FOREPERSON

The significance of the jury's responses to the special interrogatories is governed by the Employment Agreement, which contract defines the employment relationship between AJR and Mr. Benson.

Pursuant to the Employment Agreement entered into "by and between AJR, INC., a corporation, ... hereinafter referred to as the 'Company,' ... DANNY BENSON, hereinafter referred to as the 'Employee,' ... and JOHN M. RHODES, hereinafter referred to as 'Guarantor' " on August 29, 1997, AJR agreed to continue Mr. Benson's employment for a period of eight years:

1. *TERM OF EMPLOYMENT:* The Company agrees to employ the Employee on a full-time basis for a period of eight (8) years, commencing with the date of this Agreement and terminating on the 28th day of August 2005, subject to the terms and conditions set forth below, to perform and discharge the duties and responsibilities hereinafter described.

After recounting the details of Mr. Benson's job duties [8] and the salary and benefits to which he was entitled, the Employment

Agreement explained the consequences befalling the parties upon the Agreement's termination:

> 5. *TERMINATION OF THE AGREEMENT:*
>
> A. Company may terminate the Employee's employment without cause on *one* calendar days' [sic] written notice during the term of this agreement.
>
> B. In the event of a substantial reduction in the Employee's present level of responsibility, the Employee may elect to treat the reduction as a termination by the Company under Paragraph 5A. The acceptance of such a reduction for a period of time up to three months shall not be deemed to be a waiver of the Employee's right to claim the reduction as a termination under Paragraph 5A.
>
> C. Any termination pursuant to Paragraph 5A or Paragraph 5B shall obligate the Company to continue to pay the Employee the salary described in Paragraph 3 for the balance of the term of this agreement. Notwithstanding any termination pursuant to Paragraph 5A or Paragraph 5B, the Employee will remain as an employee for the purposes of the benefits set forth in Paragraph 4 for the remaining term of this agreement.
>
> D. *The provisions of Paragraph 5C shall not apply if the Employee is terminated for (a) dishonesty, (b) the conviction of a felony, or (c) voluntary termination of this agreement by the Employee.*[9]

(Emphasis and footnote added).

Essentially, then, the parties' Employment Agreement is simply an employment contract that seeks to replace the typical at-will employment relationship with a more formal arrangement to provide Mr. Benson with greater protection from discharge by AJR. Nevertheless, in this assignment of error, the parties seemingly differ as to the effect that the jury's finding of Mr. Benson's material breach of contract has on the enforcement of the terms of their Employment Agreement.

■■■ When deciding a matter involving a contract between parties, this Court first must determine whether the language employed by the contract is ambiguous. " 'The question as to whether a contract is ambiguous is a question of law to be determined by the court.' Syllabus point 1, in part, *Berkeley County Public Service District v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968)." Syl. pt. 4, *Dan's Carworld, LLC v. Serian*, 223 W.Va. 478, 677 S.E.2d 914 (2009). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." Syl. pt. 1, in part, *Berkeley County Pub. Serv. Dist.*, 152 W.Va. 252, 162 S.E.2d 189. Rather, "[c]ontract language is considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken." Syl. pt. 6, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 212 W.Va. 275, 569 S.E.2d 796 (2002). *Accord* Syl. pt. 4, *Estate of Tawney v. Columbia Natural Res., L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006) ("The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.").

■■■ If the contractual language is ambiguous, it must be construed before it can be applied. *See Estate of Tawney*, 219 W.Va. at 272, 633 S.E.2d at 28 ("[W]hen a contract is ambiguous, it is subject to construction."). However,

> " '[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed.' Syl. Pt. 2, *Bethlehem Mines Corp. v. Haden*, 153 W.Va. 721, 172 S.E.2d 126 (1969)." Syllabus point 2, *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d 40 (1984).

Syl. pt. 3, *Waddy v. Riggleman*, 216 W.Va. 250, 606 S.E.2d 222 (2004). In other words,

> " '[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as ex-

9. The final portion of the parties' Employment Agreement details the security that has been arranged to guarantee AJR's ability to pay Mr. Benson his salary during the contract term.

pressed in unambiguous language in their written contract or to make a new or different contract for them.' Syllabus Point 3, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962)." Syllabus point 1, *Hatfield v. Health Management Associates of West Virginia[, Inc.]*, 223 W.Va. 259, 672 S.E.2d 395 (2008) (per curiam).

Syl. pt. 5, *Dan's Carworld, LLC v. Serian*, 223 W.Va. 478, 677 S.E.2d 914. Thus,

" '[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' [Syllabus point 1,] *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962)[.]" Syllabus point 1, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981).

Syl. pt. 6, *Dan's Carworld*, 223 W.Va. 478, 677 S.E.2d 914.

Having reviewed the concise Employment Agreement contract at issue herein, we find the language employed to be plain and unambiguous. Pursuant to the plain language of the Employment Agreement, which Mr. Benson and AJR, by Mr. Rhodes, entered into on August 29, 1997, and which governs the terms of Mr. Benson's employment, AJR is required to pay Mr. Benson the remainder of his salary upon the termination of his employment unless the termination is attributable to Mr. Benson's dishonesty, Mr. Benson's commission of a felony, or Mr. Benson's voluntary resignation. Mr. Benson's material breach of the Employment Agreement is not an enumerated reason that would relieve AJR of the duty to pay him his salary under the remainder of the contract period. Thus, while the circuit court correctly entered judgment for AJR upon the jury's verdict finding that Mr. Benson had materially breached his employment contract, such a

judgment did not finally resolve the central issue of whether AJR remained obligated to pay Mr. Benson contractual damages when it terminated his employment. Accordingly, the circuit court properly posed these determinative factual inquiries to the jury through special interrogatories.

 In answering these special interrogatories, the jury found that Mr. Benson's drug use, and not his dishonesty, was the reason relied upon by AJR in terminating his employment.[10] While drug use might be a valid reason for terminating Mr. Benson's employment under the "AJR, Inc. Employee Manual" that governs all AJR employees, Mr. Benson's employment was governed not by said Employee Manual but by the separate Employment Agreement that he had entered into with AJR and Mr. Rhodes. Insofar as Mr. Benson's drug use does not relieve AJR of its liability under this contractual agreement, and insofar as the jury found that AJR did not fire Mr. Benson for dishonesty, AJR is required to pay Mr. Benson his salary for the remainder of the contract period. Accordingly, the circuit court correctly entered judgment in favor of Mr. Benson upon the jury's responses to the court's special interrogatories.

Therefore, because AJR has failed to "carry the burden of showing error in the judgment of which [it] complains," Syl. pt. 5, in part, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897, we affirm the circuit court's entry of judgment for AJR on the jury's general verdict and the circuit court's entry of judgment for Mr. Benson on the jury's special interrogatories.

### C. Circuit Court Erred by Awarding Damages to Mr. Benson

AJR finally contends that the circuit court erred by awarding damages to Mr. Benson based upon the jury's responses to the special interrogatories when the jury's finding

---

10. During the proceedings underlying this Court's decision in *Benson I*, the circuit court had determined that drug use constituted dishonesty and thus relieved AJR of its contractual obligations under the parties' Employment Agreement. However, in *Benson I*, we concluded that whether conduct is dishonest is a question of fact to be resolved by a jury. *See Benson*

*I*, 215 W.Va. at 328, 599 S.E.2d at 751. *Accord* Section I., *supra*. Thus, pursuant to our mandate in *Benson I*, the circuit court on remand asked the jury to decide whether AJR had terminated Mr. Benson for dishonesty or for drug use in order to determine whether AJR had been relieved of its obligations under the Employment Agreement.

that Mr. Benson had materially breached his employment contract with AJR before his discharge relieved AJR of further performance under the contract and precluded Mr. Benson's recovery of contract damages. In support of its position, AJR represents that, "[i]n West Virginia, a material breach of a contract by one party excuses the other party from further performance under the contract[,] ... [and,] [a]s a matter of law, [Mr.] Benson's material breach excused [AJR and Mr. Rhodes] from any further obligation under the employment contract." Appellant's Br. at pp. 22, 24 (citing *West Virginia Human Rights Comm'n v. Smoot Coal Co., Inc.,* 186 W.Va. 348, 353, 412 S.E.2d 749, 754 (1991) (per curiam); *Emerson Shoe Co. v. Neely,* 99 W.Va. 657, 661, 129 S.E. 718, 719 (1925); *J.W. Ellison, Son & Co. v. Flat Top Grocery Co.,* 69 W.Va. 380, 387–88, 71 S.E. 391, 394–95 (1911)). AJR further contends that, because Mr. Benson's material breach of contract placed him in the position of an at-will employee, the jury's special interrogatory finding that AJR had terminated Mr. Benson as a result of his drug use was irrelevant since, as an at-will employee, AJR could terminate Mr. Benson for any, or no, reason whatsoever. Given Mr. Benson's forfeiture of his right to recover from AJR on his employment contract upon his breach thereof, AJR asserts that the circuit court erred by awarding Mr. Benson contract damages.

Mr. Benson replies that "the term 'material breach' has been defined as 'a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract.'" Appellee's Resp. Br. at pp. 13–14 (quoting *Horton v. Horton,* 254 Va. 111, 115, 487 S.E.2d 200, 204 (1997) (internal citations omitted)). Applying this law to the instant proceeding, Mr. Benson asserts that

> [t]here is no evidence that, even according to the employer, [Mr.] Benson did anything to defeat the essential purpose of his employment contract. He performed well and without incident on the job according to all involved. The individual defendant corporate owner testified that he had no complaint regarding [Mr.] Benson's job performance.

Appellee's Resp. Br. at p. 14 (footnote omitted). Moreover, Mr. Benson argues that AJR agreed to the "basis for the damage calculation [and] mitigation offsets," *id.,* and, thus, cannot complain about the amount of damages awarded to him.

In its final assignment of error, AJR contends that the circuit court erred by awarding damages to Mr. Benson when the jury had determined that Mr. Benson had materially breached his employment contract with AJR. As we explained in Section III.B., *supra,* the jury's finding of material breach does not automatically relieve AJR of its obligation to pay damages to Mr. Benson. Rather, whether Mr. Benson may recover damages from AJR is governed solely by the parties' Employment Agreement. Under the terms of this agreement, if AJR terminates Mr. Benson's employment, AJR is required to pay Mr. Benson his salary for the remainder of the eight-year contract period unless Mr. Benson was "terminated for (a) dishonesty, (b) the conviction of a felony, or (c) voluntary termination of this agreement by [Mr. Benson]." Under the facts of this case, the jury specifically found, through special interrogatory, that AJR terminated Mr. Benson for "drug use rather than dishonesty." Because drug use is not an enumerated exception to AJR's obligation to pay Mr. Benson in accordance with the Employment Agreement's terms, AJR is not relieved of its obligation to pay damages to Mr. Benson thereunder. Given the plain language of the Employment Agreement, the circuit court was bound to enforce its terms. *See* Syl. pt. 6, *Dan's Carworld, LLC v. Serian,* 223 W.Va. 478, 677 S.E.2d 914 ("'"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." [Syllabus point 1,] *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962)[.]' Syllabus point 1, *Bennett v. Dove,* 166 W.Va. 772, 277 S.E.2d 617 (1981)."). Accordingly, the circuit court correctly awarded contract damages to Mr. Benson consistent with the parties' Employment Agreement, and we,

therefore, affirm the circuit court's ruling in this regard.

## IV.

## CONCLUSION

For the foregoing reasons, the July 18, 2008, order of the Circuit Court of Wood County is hereby affirmed.

Affirmed.

Justice BENJAMIN concurs and reserves the right to file a concurring opinion.

BENJAMIN, J., concurring:

It is often said that "beauty is in the eye of the beholder." How apt this phrase seems to sometimes be when applied to judicial decisions. That it applies so often in a time when group after group publicly complain that judges should "just follow the law" is ironic since the same groups seem to have little hesitancy to publicly judge judges based not on the method and legal accuracy of what the court actually did, but rather on whether the result is deemed "good" (*i.e.*, pro-business, pro-labor, pro-Democrat, pro-Republican, pro-this group, pro-that group) or "bad" (*i.e.*, anti-business, anti-labor, anti-Democrat, anti-Republican, anti-this group, anti-that group). When judges must rely on the transparency of their decisions for their defense, the process of partisanship by this group or that becomes all the more easier.

I sense this is a case which lends itself to such partisanship. Benson is not a likable plaintiff. However, what the Defendants essentially want this Court to do is to save them from a lawful business contract into which they freely and consciously entered. In other words, the Defendants seek this Court to ignore the "rule of law" and, despite their bad purchase deal, to save them from themselves *despite the rule of law.*

AJR, Inc., manufactured and welded truck beds. It was a family concern. In 1997, John Rhodes sought to purchase AJR. As part of the deal, Rhodes entered into a legally binding guaranteed employment agreement with Danny Benson, a family member. Such arrangements are not uncommon when family concerns are purchased. Family members often wish to ensure that other family members are guaranteed continued employment for a period of time. Both sides had a full and adequate opportunity to negotiate the terms of the guaranteed employment agreement here. In other words, no one had a gun to his head.

In retrospect, the agreement which Rhodes made seems amazingly narrow. However, it is not for this Court to look beyond the contract since it was freely entered into. Benson was guaranteed eight additional years of employment or the equivalent in pay. He could be terminated with only a one day notice for any reason, though the obligation to pay remained absent Benson doing one of three specific things. From a business sense, the eight years of employment was therefore essentially already factored into the purchase price of AJR. Under the terms of the employment contract, AJR could avoid its binding obligation to pay Benson only if one of three specific things happened: Benson was convicted of a felony (he was not); Benson voluntarily terminated his employment (he did not), or Benson engaged in dishonesty.

When Benson was terminated, the "Reason for Termination" was listed as "Tested Positive for Cocaine." He had never made any representation whether he used or did not use cocaine, though the employer no doubt reasonably assumed he did not. Initially, the Circuit Court of Wood County granted summary judgment, finding Benson's actions to have been "dishonest" as a matter of law. In 2004, this Court reversed the summary judgment, concluding that the term "dishonesty" and whether Benson's termination was because of "dishonesty" was a question of fact for a jury. The Court noted that the employer neglected to make any reference to "dishonesty" on its "Reason for Termination." See *Benson v. AJR, Inc.* (*Benson I*), 215 W.Va. 324, 599 S.E.2d 747 (2004).

After a trial, a special verdict form was given to the jury. The special verdict form demonstrated that Benson was not terminated for dishonesty, but rather for drug use. Certainly, one can conclude that Benson should have been terminated. The company

had that right and it exercised that right. What the company did not have the right to do, however, was to renegotiate the terms of the contracts surrounding the purchase of AJR, Inc., or, essentially, to have this Court do it for them.

Cases such as these are not easy. However, as with the other judges who have reviewed this matter, I must conclude that the contract should be given effect as written and as agreed to. To do otherwise and render a decision of a "feel good" or "politically correct" nature would be to engage in situational decision-making, which leads to instability within the legal system and, consequently, a lack of stability and predictability in our state. I do not believe there is a legal basis to overrule the findings of the jury. I therefore concur with the majority opinion.